### 3744. HOLT v. THE STATE.

1. The question of law raised by the special plea is fully controlled by the decision of this court in *Horton* v. *State*, ante, 33 (74 S. E. 559).
2. The verdict is without any evidence to support it, as to the existence of the essential element of criminal intent.

DECIDED APRIL 2, 1912.

Accusation of extortion; from city court of Fitzgerald—Judge Wall. September 6, 1911.

*Haygood & Cutts, Elkins & Wall,* for plaintiff in error.

*A. J. McDonald, solicitor, L. Kennedy,* contra.

HILL, C. J. 1. The plaintiff in error was convicted of the offense of extortion, and he excepts to the judgment overruling his motion for a new trial. Before pleading to the merits the accused filed a special plea, setting up the following facts: An accusation was filed against him, signed by the solicitor of the city court and based upon the affidavit of the solicitor, charging the offense of extortion. The presiding judge quashed this accusation and entered an order appointing a solicitor pro tem., apparently entertaining the view that the solicitor of the court was disqualified, because he had made the affidavit upon which the accusation was based. The solicitor pro tem. preferred an accusation, based upon

the affidavit of the solicitor. It is insisted that this affidavit was illegal, because the law does not contemplate or authorize the appointment of a solicitor pro tem. upon the disqualification of the regular solicitor, and that no valid accusation can be preferred against the accused in the city court, based upon an affidavit made by the solicitor of the city court; and that the accusation was therefore invalid and should be quashed. This plea was overruled.

We think the plea was properly overruled. We do not agree to the proposition that the solicitor of a court can not himself, if he knows the facts upon which the affidavit is based, make such affidavit and subsequently prefer an accusation charging the offense covered by the affidavit. The making of the affidavit does not disqualify the solicitor from subsequently preferring the accusation and prosecuting the case. The action of the presiding judge, however, in relieving the regular solicitor of the prosecution of the case because he had made the affidavit upon which the accusation was founded, and appointing a solicitor pro tem. to conduct the prosecution, was fully authorized, and was not a matter of which the accused could complain. *Horton* v. *State,* ante, 33 (74 S. E. 559).

2. Numerous special assignments of error are contained in the amended motion for a new trial, but the view that we entertain of the merits of the case renders unnecessary a decision of the special questions made. The facts make the following case: The accused was the deputy sheriff of the county and was assigned to duty in the city court. He was directed by the solicitor to arrest three women charged with some criminal offense. He went to the home of these women, and told them that he had come to arrest them. It does not appear that the accused had in his possession any warrant, and the fact is not material. The women objected to being arrested, and asked the officer if there was any way to avoid an arrest. He finally consented to accept from each woman $10 as a "cash bond" for her appearance, and, in puruance of this agreement, the $10 was delivered to him by each of the women. The accused returned to the sheriff's office and reported the fact that he had taken "cash bonds" for the appearance of the women. For some reason the mayor of the City of Fitzgerald and the clerk of the city court, and the solicitor of the city court, demanded that the deputy sheriff pay over the money to them, and this the deputy sheriff declined to do. The deputy sheriff, in his state-

ment to the jury, admitted receiving the money, and said that he thought that he had a right to receive it as "cash bonds;" that he promptly notified the sheriff that he had received it; that it was deposited in the bank for the court, and that he had never claimed any interest in it as an officer or otherwise; that he had not used the money, and that it was still in the bank, subject to the order of the court; that when the question was made as to his right to accept the money as "cash bonds" he consulted Mr. Elkins, Judge Kennedy, and Judge Haygood, and asked their advice as to what to do with the money, and they advised him to hold it until the regular term of the city court, and said that they would take an order for the proper disposition of the money. The attorneys referred to by the accused were not introduced by the accused in his behalf, but his statement was not controverted. There is no evidence to show that the official took the money from the women for his own personal use, or that he demanded the same by virtue of his official position. He seems to have consented to accept the money as "cash bonds" under the impression that he had a right to take "cash bonds." In other words, there seems to be an utter absence of any evidence of criminal intent on the part of the accused. It may be conceded that he had no right to take a "cash bond," but this fact would not be sufficient of itself to show any criminal intent, especially in view of the well-known practice indulged in by officers in this State of taking "cash bonds" in criminal cases. The Penal Code (1910), § 302, defines the offense of extortion as follows: "Extortion shall consist in any public officer's unlawfully taking, by color of his office, from any person any money or thing of value that is not due to him, or more than his due." The word "extortion" acquired a technical meaning at common law, and was defined to be the corrupt or unlawful taking by an officer of money or anything of value that is not due him, or the corrupt and unlawful taking of money or anything of value more than is due him, or before it is due him; and the offense of extortion as defined by the code section, supra, seems to embody the same meaning. The technical legal meaning of the word is the taking of money or anything of value by an officer by color of his office, either when none is due him, or more than is due him, or probably where it is not yet due. 3 Words and Phrases Judicially Defined, 2623. While in its larger sense it signifies any

oppressive taking of money under color of right, in its strict sense it signifies the taking of money as costs by an officer, by color of his office, where none, or only a part, is due. In other words, the offense of extortion consists of the oppressive misuse of official power by the exaction of money. Now, the evidence in this case indisputably shows that the accused, as deputy sheriff, did not demand or extort from the three women the money in question as costs due him in the case. He accepted it from them in lieu of their bond, and as a "cash bond," under the belief that as an officer he had the right to accept a "cash bond." He did not exact the money for his own use. He held it in trust for the women, who on their appearance were entitled to receive it back. The undisputed evidence is that he did not use the money, but deposited it in the bank, where at the time of the trial it was held subject to the order of the court. Under these facts it seems to us that his conviction of the offense of extortion was unauthorized. Even if it be conceded that he had no right to accept from these women a "cash bond" for their appearance, yet his doing so was a mistake of law; and while ignorance of the law is no excuse, yet there can be no offense unless there is a joint union or operation of act and intent; and if the act of the officer in taking the cash bonds was not authorized by law, there certainly seems to have been no criminal intent on his part in doing the act.

*Judgment reversed. Pottle, J., not presiding.*