## A93A1692. WILSON v. THE STATE.
(439 SE2d 701)

ANDREWS, Judge.

Wilson was convicted of ten counts of theft by taking, OCGA § 16-8-2, and appeals from the entry of judgment on the conviction and the denial of his motion for new trial.

Counts 1 through 4 and 6 through 9 of the indictment alleged that on dates between November 11, 1989 and May 6, 1991, Wilson "being in lawful possession of United States currency received from [eight named individuals], the property of the City of Fort Oglethorpe, Catoosa County, Georgia, with a value less than five hundred dollars ($500.00), appropriate said property with the intention of depriving said owner of said property, said defendant, at the time of the appropriation, being a government employee acting in breach of his duties." Count 5 alleged a value of more than $500 received from another individual. Count 10 alleged that Wilson "between November 11, 1989 to May, 1991, did unlawfully, being in lawful possession of United States currency, the property of the City of Fort Oglethorpe, . . . with a value greater than five hundred dollars ($500.00), appropriate said property with the intention of depriving said owner of said property." Counts 5 and 10 did not include the language "being a government employee acting in breach of his duties."

The State's evidence was that Wilson was employed by the Town of Fort Oglethorpe to collect cash bonds and fines; that from the individuals named in Counts 1 through 9 Wilson collected cash bonds or fines, totaling less than $5,000, and appropriated same to his own use; and, that the total loss to Fort Oglethorpe was over $56,000. Wilson's statement to the police confirmed that he received and appropriated the cash but believed it was about $10,000 or $12,000.

1. The first enumeration is that the court erred in not granting Wilson's motion for directed verdict on the grounds that there was no

evidence showing Wilson had the legal authority to receive the funds he allegedly converted and therefore was in "lawful possession" as alleged in the indictment; there was no evidence to show that the funds converted belonged to the Town of Fort Oglethorpe; and therefore there was a fatal variance between the allegata and probata.

The question for this court in reviewing the denial of a motion for directed verdict under OCGA § 17-9-1 is whether the evidence was sufficient under *Jackson v. Virginia*, 443 U. S. 307, 310 (99 SC 2781, 61 LE2d 560) (1979); *Humphrey v. State*, 252 Ga. 525, 527 (314 SE2d 436) (1984).

In his motion for directed verdict, Wilson requested the court to take judicial notice of the local laws establishing the Town of Fort Oglethorpe.

The Town of Fort Oglethorpe was incorporated by Ga. L. 1949, p. 703 et seq. The act provided for the election of a mayor and aldermen. Sec. 5, p. 707. Further, in Sec. 20, p. 713, the office of "Clerk and Treasurer" was established. It stated that "the Mayor and Aldermen of said town annually at their first meeting in January . . . shall elect a Clerk and Treasurer, who may be one of the Aldermen . . . and whose terms . . . shall be for two years (2) and . . . [h]e shall collect all municipal taxes, . . . and collect all license fees and other moneys due the town. . . . He shall be the custodian of the funds. . . ."

Section 21 provided for the election of a Marshal who would be the "chief police" and who "shall collect all fees imposed by the Mayor's Court. . . ." Section 23 (a) provided for the mayor's court with jurisdiction to try offenders against the laws and ordinances of the town within the corporate limits and, if a State law had been violated, to bind the accused over to the proper court and assess bail. The mayor was to sit as presiding officer[1] and the "Clerk of the town shall act as Clerk of said court and the Marshal or other police officers of said town shall attend said court." Subsection (h) provided that "[s]aid court shall have the power to fix bail, accept bonds for the appearance . . . of offenders for trial, and if such offenders shall fail to appear . . . the cash so deposited shall be by order of the officer presiding declared forfeited to the Town of Fort Oglethorpe."

Section 27 provided that "the Marshal or other police officer . . . shall have the right, power and privilege to release any person arrested . . . for an offense against the laws . . . of said town upon said person giving bond to be approved by the Marshal or Mayor of said town . . . conditioned to pay the obligee . . . an amount fixed by the Marshal or Mayor of said town. . . ."

---

[1] This provision was amended to provide for the appointment of a judge by the mayor and aldermen to preside. Ga. L. 1973, pp. 3065, 3066.

From the foregoing, Wilson argues that the State did not prove he was a person authorized to accept cash bonds and fines and therefore did not prove that he came into "lawful possession" of the cash and that the cash was "property of the City of Fort Oglethorpe."

"Where cash bonds are not lawful, the political subdivision can have no title to or legal interest in the property. *Holt v. State*, 11 Ga. App. 34 (74 SE 560); *Washburn v. Foster*, 87 Ga. App. 132 (1) (73 SE2d 240); *Scarboro v. State*, [207 Ga. 449 (2) (62 SE2d 168)]." *Land v. State*, 103 Ga. App. 496, 497 (1) (119 SE2d 809) (1961).

All of these cases stand for the proposition that where the *political subdivision* is not authorized to accept cash bonds *it* cannot have a property right in that cash it accepts. It is not disputed that *Fort Oglethorpe* had the authority to accept cash bonds. These cases *do not* stand for the proposition that cash bonds accepted on behalf of a political subdivision by persons unauthorized to do so by *internal* authorization are not property of the political subdivision.

Nor do any of the cases cited stand for the proposition that such receipt is not "lawful possession" within the meaning of OCGA § 16-8-2. "Lawful possession" therein simply means that the property did not come into the thief's hands *initially* by *theft*. See *Lawhorn v. State*, 200 Ga. App. 451, 454 (1) (408 SE2d 425) (1991).

Further, public officials are presumed to do their duty. Thus, the state was entitled to the unrebutted presumption that the appropriate officials of Fort Oglethorpe had authorized Wilson to collect fines and bonds in accordance with the requirements of the charter.

The evidence was legally sufficient. *Lawhorn*, supra at 456 (5).

2. In his second enumeration, Wilson alleges that the trial court erred in charging the entirety of OCGA § 16-8-2.

The court charged the jury that "I instruct you that theft by taking is defined as follows, a person commits theft by taking when he unlawfully takes, or being in lawful possession thereof, unlawfully appropriates any property of another, with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated."

"It is not usually cause for a new trial that an entire Code section is given . . . even though a part of the charge may be inapplicable under the facts in evidence." *Keller v. State*, 245 Ga. 522 (265 SE2d 813) (1980). In this case the lack of any evidence or contention that Wilson committed the theft in any way or manner other than that alleged in the indictment eliminates any reasonable probability that the jury convicted Wilson of committing theft by taking in a manner that was not that alleged in the indictment. Thus, any possible error resulting from the trial court's inclusion of the extraneous words is harmless beyond a reasonable doubt. *Childs v. State*, 257 Ga. 243, 253 (357 SE2d 48) (1987); compare *Walker v. State*, 146 Ga. App. 237,

239 (246 SE2d 206) (1978).

3. Based on our holding in Division 1, there was no error in the court's failure to give Wilson's requests to charge as argued in his third enumeration.

4. Wilson contends that the court's failure to dismiss Count 10 of the indictment was error.

Wilson filed a pre-trial motion to dismiss, contending that the indictment was vague and ambiguous and failed to sufficiently apprise Wilson of the charges against him.

"The true test of the sufficiency of an indictment that will withstand a general demurrer is laid down by Judge Bleckley . . . as follows: If all the facts which the indictment charges can be admitted, and still the accused be innocent, the indictment is bad; but if, taking the facts alleged as premised, the guilt of the accused follows as a legal conclusion, the indictment is good. (Cit.) *Gower v. State*, 71 Ga. App. 127, 128 (1) (30 SE2d 298) (1944). See *State v. Eubanks*, 239 Ga. 483, 485 (238 SE2d 38) (1977). . . . An indictment which charges the offense in the language of the defining statute and describes the acts constituting the offense sufficiently to put the defendant on notice of the offense with which he is charged survives a general demurrer. *Gaines v. State*, 80 Ga. App. 512, 517 (56 SE2d 772) (1949). . . . There was no error in overruling this demurrer." (Punctuation omitted.) *Drewry v. State*, 201 Ga. App. 674, 675 (411 SE2d 898) (1991).

Finally, Wilson argues in this court that the trial "court should have, sua sponte, instructed the jury that it should only consider the amount alleged in Count 10 as it related to any funds *not* covered by the other nine counts." Arguments not raised in the trial court will not be considered by this court. *Fancher v. State*, 190 Ga. App. 438 (378 SE2d 923) (1989).

*Judgment affirmed. Pope, C. J., and Birdsong, P. J., concur.*

DECIDED DECEMBER 1, 1993 —
RECONSIDERATION DENIED DECEMBER 17, 1993 —

*Harriss, Hartman, Aaron, Wharton & Boyd, John L. O'Dell*, for appellant.

*Ralph L. Van Pelt, Jr.*, District Attorney, *Michael R. McCarthy*, Assistant District Attorney, for appellee.