A01A1678. SCOTT v. THE STATE.
(554 SE2d 513)

JOHNSON, Presiding Judge.

In this vehicle-to-vehicle shooting case, Mack Scott was convicted of aggravated assault and aggravated battery upon the driver of a car and aggravated assault upon the passenger in the car. He ap-

peals, raising arguments regarding the sufficiency of the evidence, effective assistance of counsel, and the correctness of the jury instruction on aiding and abetting.[1]

At the outset, we note that Mack Scott's brief fails to comply with Court of Appeals Rule 27 (a) (1), requiring that an appellant's statement of facts contain citations to the record or transcript essential to a consideration of the issues raised. The statement of facts in Mack Scott's brief is entirely devoid of such citations, and it is not this Court's role to cull the record on Mack Scott's behalf.[2] However, we will address Mack Scott's enumerations of error given the few record citations included in the argument portion of his brief.

1. Mack Scott contends that the trial court should have granted his motion for a directed verdict because the evidence was insufficient to support his convictions. A motion for a directed verdict of acquittal should be granted only when there is no conflict in the evidence and the evidence demands a verdict of acquittal as a matter of law; a challenge to the sufficiency of the evidence in connection with the denial of a directed verdict of acquittal is evaluated based on the standard set forth in *Jackson v. Virginia*.[3] We only address the sufficiency of the evidence, and we do not weigh the evidence or determine the credibility of the witnesses.[4] As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, the jury's verdict will be upheld.[5]

Viewed in the light most favorable to the verdict, the record shows the following facts. On July 26, 1999, Mack Scott, indicating he wished to test-drive a BMW, borrowed one from a dealership in Athens. That car had a blue exterior and a gray interior. He agreed to return it either later that day or in the morning. The following morning he was observed at the Jackson County Courthouse in the driver's seat of the BMW. His brother, Jerry Scott, was also in the car. Their nephews, Bob Scott and Timmy Ransom, were at the courthouse that morning being arraigned on drug charges. The record further shows that Mack Scott believed Bob Scott had taken $9,000 worth of cocaine from him.

After the arraignments, Bob Scott drove toward Athens with Connie Wakefield in her car. Tiffany Shield, who had no connection with any of the parties, was driving behind them. She saw a blue

---

[1] A fourth enumeration — that one of the counts should have merged into one of the other two — is moot because the trial court did merge the counts after the original sentencing.

[2] *Powles v. State*, 248 Ga. App. 4 (545 SE2d 153) (2001).

[3] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); see *Postell v. State*, 233 Ga. App. 800, 801 (1) (505 SE2d 782) (1998).

[4] *Kellibrew v. State*, 239 Ga. App. 783 (1) (521 SE2d 921) (1999).

[5] Id.

BMW with a light-colored interior and a dealer tag pass her on the left side in a no-passing zone.

The BMW and the car being driven by Bob Scott scraped together. Wakefield heard gunfire, and Bob Scott fell over into her lap. Wakefield was also shot. When she regained consciousness, she realized her car had collided with a truck. Bob Scott had been shot in the eye. Within an hour after the shooting, Bob Scott told a sheriff's investigator that he had been shot by Mack Scott and Jerry Scott. A few days later he told the investigator that a vehicle pulled up beside him, that Jerry Scott fired a gun at him, and that Mack Scott was also in the car. He also told Wakefield a month or so after the incident that Mack Scott and Jerry Scott were involved in the shooting.

Subsequently, the car dealership received a call, apparently from Mack Scott's sister, as to the location of the BMW. When the BMW was retrieved, it was obvious that it had been damaged after it had been loaned to Mack Scott and that the damage had been poorly repaired. In addition, Wakefield's car had bullet holes in its left side.

Mack Scott argues that the evidence was insufficient to support his convictions because it merely showed that he was present at the scene. As we recently stated in *Melvin v. State*,[6] however, "[w]hile it is true that mere presence at the scene of the commission of a crime is not sufficient evidence to convict one of being a party thereto, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred." Here, there was significant inculpatory evidence of Mack Scott's presence, companionship, and conduct before and during the offense, which allowed for reasonable inferences of Mack Scott's "participation in the criminal intent."[7] Mack Scott borrowed the BMW used in the shooting the day before the shooting. He was observed the morning of the shooting in its driver's seat, with Jerry Scott also in the car, at the same courthouse where one of the victims was being arraigned on drug charges. Within an hour after the shooting, one of the victims told a sheriff's investigator that he had been shot by Mack Scott and Jerry Scott; and a few days later, he told the investigator that a vehicle pulled up beside him, that Jerry Scott fired a gun at him, and that Mack Scott was also in the car. A month or so after the shooting, that victim told the other victim that Mack Scott and Jerry Scott were involved in the shooting. The evidence was sufficient to convict Mack Scott of being a party to the crimes charged.[8]

While Mack Scott contends that the trial court erred by admit-

---

[6] 246 Ga. App. 727-728 (1) (542 SE2d 140) (2000).

[7] See id.

[8] *Jackson v. Virginia*, supra; *Melvin*, supra.

ting hearsay regarding his alleged motive for participating in the charged offenses, we need not reach this issue. The state was not required to establish motive, since motive is not an element of the offenses of aggravated assault or aggravated battery.[9] Thus, even if the complained-of testimony did constitute hearsay, the admission of this evidence was not reversible error. Moreover, Ransom testified that Mack Scott told him that Mack Scott thought Bob Scott had taken his cocaine. Ransom's testimony on this point constituted an admission by Mack Scott, so it is admissible as an exception to the hearsay rule[10] and thus is entitled to probative value in considering the sufficiency of the evidence.[11] The admissible evidence presented was sufficient for a rational trier of fact to find Mack Scott guilty beyond a reasonable doubt of aggravated assault and aggravated battery.

Mack Scott further contends that the evidence against him was entirely circumstantial and that it failed to exclude every reasonable hypothesis other than guilt.[12] In particular, Mack Scott notes that he presented evidence of an "entirely reasonable" alibi defense. He correctly concedes, however, that "the jury was authorized not to believe [his] alibi."[13] Moreover, although he claims that "a reasonable hypothesis of innocence emerges from the evidence at trial," he offers no specifics beyond his alibi evidence. As we noted in *Robinson v. State*,[14]

> [q]uestions as to reasonableness are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, the appellate court will not disturb the finding, unless the verdict is unsupportable as a matter of law.[15]

Here, the verdict is not insupportable as a matter of law, and we will not disturb the jury's finding that the evidence was sufficient to exclude every reasonable hypothesis save that of guilt.

2. Mack Scott contends he was denied effective assistance of counsel. To prevail on this claim, he has the burden of proving not only counsel's deficient performance, but also that the deficiency was so prejudicial to his defense that, but for the deficiency, there is a

---

[9] See OCGA §§ 16-5-21; 16-5-24.
[10] *Summerour v. State*, 211 Ga. App. 65 (1) (438 SE2d 176) (1993).
[11] *Williams v. Lawrence*, 273 Ga. 295, 298 (540 SE2d 599) (2001).
[12] See OCGA § 24-4-6.
[13] *Roberts v. State*, 267 Ga. 669, 671 (1) (482 SE2d 245) (1997).
[14] 203 Ga. App. 759 (417 SE2d 404) (1992).
[15] (Citations and punctuation omitted.) Id. at 760 (1).

reasonable probability the outcome of the trial would have been different.[16] The trial court's finding that Mack Scott was afforded effective assistance of counsel must be upheld on appeal unless clearly erroneous.[17]

(a) Mack Scott argues that his trial counsel should have objected to the questioning of two witnesses regarding a prior incident between Jerry Scott and Bob Scott. Mack Scott correctly points out that there was no evidence that he was in any way involved in the earlier incident. He further states that this evidence "served no purpose other than to prejudice the jury against [him] by bringing up irrelevant matters about his brother." Mack Scott's trial counsel did not object on the ground of relevance to the questioning about the prior incident either time it occurred (while Bob Scott was testifying and again while Wakefield was testifying). He did, however, bring out during cross-examination that Mack Scott was not involved in the prior incident.

Moreover, in a bench conference during Wakefield's testimony, Mack Scott's trial counsel assured the court that his not objecting to the questioning regarding the prior incident was a matter of trial strategy. Mack Scott's trial counsel testified at the hearing on the motion for a new trial that he did not object to the questioning of Wakefield about the prior difficulty because "I felt it was important that the jury know that . . . there were prior difficulties between [Jerry Scott] and [Bob Scott] and not [Mack Scott] and [Bob Scott]. . . . I believed [the testimony] relevant to show who the culprit in this case was or to show who wasn't the culprit, who had motive, who did not have motive." We regard this as a reasonable strategy for dealing with this testimony (and with Bob Scott's earlier testimony regarding the same incident). Moreover, counsel's decisions on matters of trial strategy, even if unwise, do not amount to ineffective assistance of counsel.[18]

(b) Mack Scott also claims that his trial counsel should have objected to the prosecutor's questioning of Wakefield regarding Bob Scott's statement to her about which of the BMW's occupants was involved in the shooting. According to the trial transcript, Bob Scott testified that he could not remember telling the investigator that Mack Scott and Jerry Scott were in the car shooting at him or that Mack Scott was in the car. Wakefield testified that Bob Scott told her that Mack Scott and Jerry Scott were involved in the shooting. Bob Scott's inconsistent statement to Wakefield was admissible as sub-

---

[16] *Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[17] *Sabbs v. State,* 248 Ga. App. 114, 115 (2) (545 SE2d 671) (2001).

[18] *Scott v. State,* 238 Ga. App. 258, 260-261 (2) (518 SE2d 468) (1999).

stantive evidence.[19] Because Mack Scott's trial counsel had no valid objection to make,[20] this contention lacks merit.

(c) Mack Scott contends that his trial counsel should have interposed a bolstering objection to the prosecutor's questioning of the investigator regarding Ransom's statements to him about the cocaine Bob Scott allegedly took from Mack Scott. We agree that such an objection could have been made successfully. We do not believe, however, particularly in view of the other evidence, that the deficiency was so prejudicial to Mack Scott's defense that, but for the deficiency, there is a reasonable probability the outcome of the trial would have been different.[21]

3. Mack Scott's final enumeration of error is that the trial court erred in its recharge on aiding and abetting. The trial court gave the pattern charge on the definition of party to a crime. In its charge, the trial court stated that "[a] person is a party . . . if that person . . . intentionally helps in the commission of the crime."[22] During deliberations, the jury sent out a note requesting a definition of aiding and abetting.[23] After a colloquy with counsel, the court read to the jury, with some minor variations, OCGA § 16-2-20, defining when a person is a party to a crime. Subsection (b) (3) of that Code section uses the phrase "aids or abets" instead of the word "helps" found in the pattern jury charge. It states that a person is a party if he "[i]ntentionally aids or abets in the commission of the crime." The court then told the jury: "Now, in response to the specific question you asked, I'm going to say that you should give aid and abet the common usage definition known to you and not a legal definition." Mack Scott contends that "the charge was error because the definition is not a 'common' one, but has a distinct legal definition."

It is true that "party to a crime" has a distinct legal definition. But all definitions consist of words, some of which are neither further defined nor in need of further definition.[24] This is the case with the phrase "aids or abets" in OCGA § 16-2-20 (b) (3).

Moreover, the record shows that Mack Scott did not object to the recharge. In fact, Mack Scott's trial counsel responded "[y]eah" to the

---

[19] See *Holiday v. State*, 272 Ga. 779, 780-781 (2) (534 SE2d 411) (2000); *Kirby v. State*, 187 Ga. App. 88, 89 (1) (369 SE2d 274) (1988).

[20] *Banks v. State*, 244 Ga. App. 191, 192 (1) (c) (535 SE2d 22) (2000) ("Failure to pursue a meritless motion cannot be evidence of ineffective assistance.").

[21] See *Strickland,* supra.

[22] The pattern definition of party to a crime does not use either the word "aids" or the word "abets."

[23] During the ensuing colloquy among counsel and the court, the prosecutor speculated that the reason the jury was asking for a definition of aiding and abetting even though those words (or their variants) had not been used in the charge was that both he and defense counsel had used those words to the jury.

[24] See generally *Ross v. State,* 231 Ga. App. 506, 508 (2) (499 SE2d 351) (1998).

court's statement that it was planning to "[g]ive aid and abet the common usage definition and not a legal definition." Thus, Mack Scott waived any exception to the recharge.[25]

*Judgment affirmed. Ruffin and Ellington, JJ., concur.*

DECIDED AUGUST 24, 2001 —
RECONSIDERATION DENIED SEPTEMBER 12, 2001 — ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*James W. Smith*, for appellant.
*Timothy G. Madison, District Attorney, Robin R. Riggs, Assistant District Attorney*, for appellee.

