A03A2430. BISHOP v. THE STATE.
(596 SE2d 674)

BARNES, Judge.

Following the denial of his motion for new trial, Kenneth Earl Bishop appeals his jury conviction for two counts of aggravated

---

[5] See *United States v. Jozwiak*, 954 F2d 458, 460 (7th Cir. 1992).

[6] *State v. D'Auria*, 229 Ga. App. at 36.

assault and possession of a firearm during the commission of a crime, asserting that the evidence was insufficient, his indictment was void, he was not informed of his right not to testify, and ineffective assistance of counsel.[1] Having examined each of these issues and discerning no error, we affirm.

1. On appeal, we view the evidence in the light most favorable to support the verdict, and Bishop no longer enjoys a presumption of innocence. Moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Young v. State*, 242 Ga. App. 681 (1) (530 SE2d 758) (2000).

So viewed, the evidence was that on May 24, 2001, Bishop crossed the street to visit his neighbor's sons after an afternoon of drinking vodka and orange juice. While he was there, his younger brother came over and the two men argued about Bishop's missing cologne. Bishop accused his brother of stealing the cologne. The argument turned into a shoving match, and Bishop pushed his brother and began hitting him. Gist Huskins and his wife drove up and one of the neighbor's sons asked Huskins to help separate the men and get them out of his mother's yard. After Huskins separated the men, Bishop walked away but told him that he should mind his own business, that "this is a family matter." As Huskins was leaving, Bishop again yelled that he should mind his own business and said that if Huskins did not, he would "be hurt." Huskins asked Bishop if he was talking to him. Bishop said "hell, yeah" and walked back across the street. Huskins and his wife got into his truck, and as they were preparing to leave, Bishop approached the truck, exchanged words with Huskins, and fired a gun into the truck. The bullet passed through both open windows and the cab of the truck without hitting the occupants.

This evidence was sufficient under the standard of *Jackson v. Virginia,* supra, 443 U. S. 307, to find Bishop guilty of aggravated assault against the Huskinses.

2. Bishop argues that the facts alleged in the indictment do not constitute a crime, and as such, the indictment is void. He also maintains that the indictment is flawed because "no intent is alleged." We do not agree.

We note preliminarily that Bishop never filed a demurrer or motion in arrest of judgment. "If the indictment was void for any reason, the question should have been raised by demurrer before pleading to the merits, or by motion in arrest of judgment after conviction." (Citation, punctuation, footnote and emphasis omitted.)

---

[1] Bishop pled guilty to possession of a firearm by a convicted felon.

*Parks v. State*, 246 Ga. App. 888, 889 (1) (543 SE2d 39) (2000). Bishop, therefore, failed to preserve any error with respect to the form of the indictment. Id.

Moreover, even had Bishop preserved these allegations of error, they are without merit. The true test of the sufficiency of an indictment that will withstand a general demurrer is as follows:

> If all the facts which the indictment charges can be admitted, and still the accused be innocent, the indictment is bad; but if, taking the facts alleged as premised, the guilt of the accused follows as a legal conclusion, the indictment is good. An indictment which charges the offense in the language of the defining statute and describes the acts constituting the offense sufficiently to put the defendant on notice of the offense with which he is charged survives a general demurrer.

(Citations and punctuation omitted.) *Wilson v. State*, 211 Ga. App. 486, 489 (4) (439 SE2d 701) (1993). The aggravated assault indictment charged that Bishop "did unlawfully then and there assault the person Gist Huskins with a handgun firearm, a deadly weapon, by pointing and firing said firearm in the immediate presence of said person." A second count of aggravated assault alleged the same act against Misty Huskins.

An assault occurs when a person "[a]ttempts to commit a violent injury to the person of another; or [c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a) (1), (2). Under OCGA § 16-5-21 (a) (2), "[a] person commits the offense of aggravated assault when he . . . assaults [another] [w]ith a deadly weapon." Therefore, aggravated assault has two elements: (1) an attempt to commit a violent injury, or an act that places another in reasonable apprehension thereof, and (2) that the assault was aggravated by the use of a deadly weapon. *Smith v. Hardrick*, 266 Ga. 54, 55 (2) (464 SE2d 198) (1995).

Bishop argues that the indictment was flawed because no "intent was alleged." However, "intent to injure is not an element of aggravated assault with a deadly weapon when the assault element is predicated on OCGA § 16-5-20 (a) (2). [Cits.]" *Jay v. State*, 232 Ga. App. 661, 662 (1) (503 SE2d 563) (1998). Unlike an aggravated assault committed with the intent to murder, rape, or rob, aggravated assault with a deadly weapon does not require a specific criminal intent; rather, it requires only a general criminal intent as defined in OCGA § 16-2-1, which in the case of simple assault under OCGA § 16-5-20 (a) (1) is a general intent to injure. *Cline v. State*, 199 Ga. App. 532, 533 (2) (405 SE2d 524) (1991).

The existence of criminal intent may be inferred by the trier of fact "upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted." OCGA § 16-2-6. The trier of fact may deduce, if it so wishes, that a person of sound mind and discretion intends the natural and probable consequences of his knowing acts. See *Parker v. State*, 256 Ga. 363, 365 (1) (349 SE2d 379) (1986). Because the indictment charged Bishop with aggravated assault under OCGA § 16-5-21 (a) (2), which requires only a showing of a general intent to injure, it was not void for failing to expressly allege the criminal intent. *Burden v. State*, 187 Ga. App. 778, 779 (2) (371 SE2d 410) (1988).

Accordingly, the indictment and accusation sufficiently described the charges against Bishop. Compare *Smith v. Hardrick*, supra, 266 Ga. at 55-56 (indictment was so fundamentally flawed as to charge no crime at all).

3. Bishop argues that he was not fully informed of his right not to testify. He maintains that he was not "charged by the court to take the stand or not." We find this argument without merit.

There is no

Georgia authority placing an affirmative duty on the trial court to advise the defendant of his right to testify in his own behalf. While it may be the better practice to apprise [defendants] of their rights in this regard, and under some circumstances it must be done, under ordinary circumstances, where no statute requires it, and where the [defendant] possesses ordinary intelligence and is under no duress, the judge need not inform the [defendant] of his constitutional privilege.

(Citations and punctuation omitted.) *Coonce v. State*, 171 Ga. App. 20, 21 (2) (318 SE2d 763) (1984); *May v. State*, 179 Ga. App. 736, 738 (4) (348 SE2d 61) (1986).

4. Bishop last enumerates as error the ineffectiveness of his trial counsel. He argues that his counsel was ineffective generally because of lack of preparation, communication, and consideration of his case, and enumerates examples of each.

To prevail on a claim of ineffective assistance of trial counsel, [Bishop] bears the burden of showing that counsel was deficient and that, but for the deficiency, there was a reasonable probability that the outcome of his trial would have been different. A failure to make either of these showings is fatal to an ineffectiveness claim. Furthermore, there is a strong

presumption that trial counsel provided effective representation, and we will not use hindsight to judge counsel's reasonable trial strategy and tactics.

(Footnotes omitted.) *Braithwaite v. State*, 275 Ga. 884, 885 (2) (b) (572 SE2d 612) (2002). "The trial court's determination with respect to effective assistance of counsel will be affirmed unless the trial court's findings are clearly erroneous." (Citations omitted.) *Hamilton v. State*, 274 Ga. 582, 587-588 (13) (555 SE2d 701) (2001).

Bishop first argues that trial counsel was ineffective for failing to request a plea from the district attorney. However, trial counsel was not ineffective in this regard because there was no reasonable basis for counsel to seek a plea when the district attorney informed him that because of Bishop's prior record, he would not recommend a plea. At the motion for new trial hearing, counsel testified that "at least one of the charges [Bishop] was facing at the time, there was a mandatory minimum ten-year sentence that was involved with that case, so there wasn't a whole lot that we could do to negotiate a plea recommendation."

Because of our finding in Division 2, we need not address Bishop's contention that trial counsel was ineffective for failing to file a demurrer to the indictment. We do note that at the motion for new trial hearing, Bishop's attorney testified that he did not file a demurrer to the indictment because "to the extent there might be a defect in that indictment . . . it would be something that the State could easily cure by re-indicting the case and just putting in the appropriate language." He also testified that he felt that the indictment was legally sufficient because "we clearly knew what we [were] on notice for. In fact, we had a preliminary hearing in this case so we knew what the allegation was."

Bishop next complains that defense counsel was deficient because he did not ask for a *Jackson-Denno* hearing. Bishop does not, however, indicate what statement he contends was made involuntarily while he was in custody. "[I]t is not this Court's role to cull the record on [a party's] behalf." *Scott v. State*, 251 Ga. App. 510, 511 (554 SE2d 513) (2001).

However, a review of the record shows that an investigator testified that Bishop told him that "he only shot up into the air." During a bench conference before the statement was introduced, Bishop stipulated that the statement was voluntary and not given in response to any interrogation. Defense counsel testified during the motion on new trial hearing that he did not recall "that there were any in-custody statements that were at issue," and that "to the extent that there were statements that were made before he was in custody, then I don't think *Jackson-Denno* would kick in."

Because the statement was made voluntarily and spontaneously to the investigator, *Miranda* warnings were not required. See *Jack v. State*, 245 Ga. App. 216, 219 (5) (536 SE2d 235) (2000). At the motion for new trial hearing, Bishop failed to offer any evidence that would have led to the conclusion that he did not make his statement voluntarily or that he was in custody at the time the statement was given, and, accordingly, failed to show that he was prejudiced by counsel's failure to request the hearing. Therefore, Bishop's trial counsel cannot have been ineffective for failing to challenge the admission of the statement.

Bishop argues that defense counsel was ineffective for abandoning the justification defense. This argument is without merit, however, because there is no evidence that counsel ever pursued this defense. Bishop did not argue that he had acted in self-defense; he argued that he did not shoot at the Huskinses, but shot his gun in the air. Because a justification defense would have required Bishop to concede that he shot at the victims, it cannot be said that trial counsel was ineffective when he did not pursue that defense in response to Bishop's assertions that he never shot at the victims.

And while Bishop also contends that his trial counsel was ineffective for failing to reserve objections to the jury charge, "[f]ailure to object to a court's charge, however, is not ineffective assistance where the appellant does not show how this prejudiced his case. [Cit.]" (Punctuation omitted.) *Gomillion v. State*, 236 Ga. App. 14, 18 (3) (c) (512 SE2d 640) (1999). He makes no such showing on appeal.

Bishop also argues that trial counsel did not call certain witnesses who would have bolstered his alibi.

> The decisions on which witnesses to call, whether and how to conduct cross-examination, which jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with his client. Trial counsel's strategic decisions made after thorough investigation are virtually unchallengeable.

(Citations omitted.) *Teat v. State*, 237 Ga. App. 867, 869 (2) (516 SE2d 794) (1999).

At the motion for new trial hearing, counsel testified that he did not recall any other witnesses who were not called "who could have added anything to our case." Moreover, Bishop did not have these potential witnesses testify at the motion for new trial hearing, so there is no evidence of what exculpatory testimony these persons might have presented.

And finally, as mentioned earlier, there is no evidence that Bishop elected to testify without being informed of the attendant risk.

Because in each instance Bishop has shown neither of the *Strickland* requirements of deficiency or prejudice, his claim of ineffective assistance of trial counsel fails.

*Judgment affirmed. Andrews, P. J., and Adams, J., concur.*

DECIDED MARCH 5, 2004.

*James E. Goad*, for appellant.

*T. Joseph Campbell, District Attorney, Mickey R. Thacker, Assistant District Attorney*, for appellee.

