## A03A0053. SCOTT v. THE STATE.
### (582 SE2d 510)

BARNES, Judge.

Jerry Scott appeals his convictions for aggravated assault and aggravated battery. After Scott was found guilty of two counts of aggravated assault by shooting Bob Scott and Connie Wakefield with a deadly weapon and aggravated battery by shooting Bob Scott in the eye and rendering it useless, he was sentenced to three consecutive twenty-year prison sentences. Upon Scott's motion, however, the trial court merged the aggravated assault, in which Bob Scott was the victim, and the aggravated battery conviction. Scott was then sentenced to two consecutive twenty-year sentences. Following the denial of his motion and amended motion for a new trial, Scott filed this appeal.

Scott contends the trial court erred by overruling his objection to the State's use of his prior inconsistent statements to impeach him and by admitting a statement under the necessity exception to the hearsay rule. He also contends the legally admissible evidence is not sufficient to sustain his conviction. We disagree, and affirm.

Viewed in the light most favorable to the verdict, the evidence shows that Bob Scott, the nephew of defendant Jerry Scott and Mack Scott,[1] was driving a small Dodge Colt, owned by Wakefield, and in which she was a passenger. While driving down the road, according to Bob Scott's trial testimony, he was shot by some white people in a passing car. After the shooting, the car in which Bob Scott was the driver crossed the centerline and hit a tractor-trailer.

The evidence also shows that a sheriff's investigator arrived at the scene of the collision between the tractor-trailer and the Dodge Colt. After he found bullet holes in the Colt and shell casings on the highway, the investigator went immediately to the hospital to interview the occupants of the Colt. At the hospital, he interviewed Bob

---

[1] Mack Scott's convictions were affirmed in *Scott v. State,* 251 Ga. App. 510 (554 SE2d 513) (2001).

Scott, a victim, within an hour of the accident. According to the investigator, Bob Scott told him that Jerry Scott shot him, and Bob Scott repeated this statement several times.

A bullet hit Bob Scott on the side of his head, and he lost his eye because of the injury. He does not remember anything after he was shot. The next thing he remembers is waking up in the hospital. Also, according to his trial testimony, he did not remember talking with an investigator from the sheriff's department at the hospital and did not remember telling the investigator that his uncles Jerry and Mack Scott were in the car and that Jerry Scott was the one who shot him. Although Bob Scott said he did not remember telling the investigator that Jerry Scott was the one who shot him, he also said that, "if I said it, I can tell you why I said it." He then testified that he had stolen money from his grandmother and because he was upset with the way his uncles were acting toward him, he blamed them for the shooting. Bob Scott also denied remembering an incident in which Jerry Scott threatened him with a gun in a store parking lot. Then, after saying that he did not remember the incident, Bob Scott testified that he "lied" to the police about it.

Bob Scott's passenger, Wakefield, testified that she and Bob Scott were driving down the road when she heard several shots and then Bob Scott fell over in her lap. She put her head down, and when she came to after the shooting, their car was near a tractor-trailer, but although she thought they hit the truck, she did not know what happened. She was wounded in the right knee and left leg. She also testified that, after the shooting, Bob Scott told her that his uncles shot them. He said that Mack Scott drove the car and Jerry Scott did the shooting. She further testified that he never said anything about white people shooting him.

Another witness testified that she was driving on the same highway, when shortly before the accident a blue BMW with a light interior, "mag wheels," and a drive-out tag passed her. The only person she saw in the car was the driver, a black man. About five minutes later she saw the accident, but the BMW was not in sight. The driver of the tractor-trailer hit by Bob Scott's car testified that he saw two cars approaching him that were engaged in a lot of "aggressive driving" and one of the cars crossed the centerline and hit his truck.

An employee of a BMW dealership testified that Mack Scott borrowed a blue BMW with a light interior to test drive. Jerry Scott was not with Mack Scott when he borrowed the car. Mack Scott did not return the car the next day as expected, and the car was later retrieved from a parking lot in another town. The car had been damaged. A Georgia Bureau of Investigation crime scene specialist also testified that he checked out the cars involved in this case, and the

BMW had a rub pattern that coincided with the damage to the car Bob Scott was driving.

1. Although Scott alleges that the trial court erred by allowing the State to introduce Bob Scott's prior inconsistent statements because the State did not lay a proper foundation, see OCGA § 24-9-83, we find that this allegation has not been preserved for appellate review.

At trial, Scott first stated, "Your honor, I'm going to object to any statement she makes regarding what Bob has told her." After the State responded that the testimony would be a prior inconsistent statement, the trial court overruled the objection. Scott made no further comment until he later stated, "Your Honor, I'm going to renew my objection again to any testimony from Bob Scott — what he may have said regarding this particular incident."

This is insufficient. "Objections to the evidence must state the grounds upon which they are based. Merely stating 'I object' is not sufficient to constitute a legal objection. By failing to raise the grounds for objection at the time the evidence was introduced, defendant waived his objections." (Citations and punctuation omitted.) *Hayes v. State*, 189 Ga. App. 39, 40 (1) (b) (375 SE2d 114) (1988). Further, because Scott also failed to object to the admission of this evidence on the grounds he now asserts on appeal, he cannot complain of this error. As "this is a court for review and correction of error, we cannot consider objections to evidence different from those raised at trial." (Citation and punctuation omitted.) *Waddell v. State*, 224 Ga. App. 172, 174 (2) (480 SE2d 224) (1996). Thus, "[w]here an entirely different objection or basis for appeal is argued in the brief which was not presented at trial we will not consider that basis as we are limited to those grounds presented to and ruled upon by the trial court." (Citation and punctuation omitted.) *Williams v. State*, 234 Ga. App. 191, 195 (6) (506 SE2d 237) (1998).

Moreover, we find that Bob Scott's prior inconsistent statements to his passenger, Wakefield, and the sheriff's investigator were properly admitted in evidence under *Gibbons v. State*, 248 Ga. 858, 862 (286 SE2d 717) (1982): "[A] prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence, and is not limited in value only to impeachment purposes." Although the technical rules regarding impeachment are not applicable, see *Ranger v. State*, 249 Ga. 315, 318 (2) (290 SE2d 63) (1982), we are satisfied that the prosecutor's examination of Bob Scott was sufficient to satisfy the criteria of OCGA § 24-9-83.

2. Scott also contends the trial court erred by allowing the statements of Tim Ransom, the victim's brother and Scott's nephew, under the necessity exception to the hearsay rule. This statement,

which was introduced through the sheriff's investigator, in essence, informed the jury that Ransom saw Jerry Scott in the BMW with Mack Scott sometime earlier on the day of the shooting.

Pretermitting whether the trial court's ruling was correct under the necessity rule, we find that any error was harmless considering that Ransom's statement was merely cumulative to the admissible statements from Bob Scott that Jerry Scott was not only in the BMW, but was the person who shot him. *Jones v. State*, 272 Ga. 154, 157 (4) (527 SE2d 543) (2000).

3. Scott further alleges that because his conviction was based on inadmissible hearsay, his convictions were not supported by the evidence. As we have rejected these contentions, we find that the evidence discussed above was sufficient to sustain Jerry Scott's convictions. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Andrews, P. J., and Adams, J., concur.*

DECIDED MAY 21, 2003.

*Earl D. Clark, Jr.,* for appellant.
*Timothy G. Madison, District Attorney, Robin R. Riggs, Assistant District Attorney,* for appellee.