## A06A0008. JOHNSON v. THE STATE.
### (634 SE2d 134)

BARNES, Judge.

Kenneth Lamar Johnson appeals his convictions for rape, aggravated sodomy, two counts of aggravated assault, three counts of burglary, and false imprisonment. He challenges the sufficiency of the evidence to sustain his convictions, the denial of his motion for new trial, and the denial of his motion for a mistrial because of a juror's contact with the prosecutor. He contends his defense counsel was ineffective and also challenges the admission of certain similar transaction evidence. Further, he contends the trial court erred by sentencing him to serve a life sentence without parole and, if he were ever to be released from prison, sentencing him to undergo chemical castration. Although we must vacate the portions of Johnson's sentence concerning his sentence to serve life without parole and chemical castration, we find no merit to his other allegations, and for the reasons discussed below, affirm his convictions and the remaining portions of his sentence.

Viewed in the light most favorable to the verdict, *Taylor v. State*, 226 Ga. App. 254, 255 (485 SE2d 830) (1997), the evidence shows that the victim was seated on the front porch of an abandoned house when Johnson sat down next to her. He propositioned her for sex, but she

refused. He then held a knife at her throat, broke into the house, dragged her into it, and, with the knife still at her throat, forced her to commit oral sodomy, raped her, and then forced her to commit oral sodomy again. The victim described the knife that Johnson used in the crime, and a knife matching that description was obtained from Johnson. The State introduced evidence of three prior incidents in which the victims testified that Johnson had raped them, and, pursuant to a stipulation with Johnson, introduced evidence of a polygraph which shows that Johnson was deceptive when he denied committing the sex crimes for which he was on trial.

Johnson testified and denied raping the victim, making her commit sodomy, or holding a knife to her throat, saying that the victim consented to the sex in return for drugs, and that when he refused to give her drugs, she claimed that she was raped. He also argues that the victim should not have been believed because during the entire time with a knife at her throat, she received no cuts, scratches, bruises, nicks, or any physical injury whatsoever. He contends that she created this story to satisfy her boyfriend. Moreover, Johnson also maintains he cannot be convicted because no physical evidence supported the victim's testimony.

1. Johnson's arguments that the verdict is decidedly and strongly against the weight of the evidence and that the evidence was sufficiently close as to warrant a new trial are addressed to the wrong court. The law gives to the trial judge alone the authority to grant a new trial for such reasons. *Dixon v. State*, 192 Ga. App. 845, 846 (386 SE2d 719) (1989). As explained in Division 2, this court considers the sufficiency of the evidence, not the weight.

2. In his appellate brief, Johnson sets forth his version of the events and why the jury should have discredited the victim's testimony. This argument fails to appreciate the function of an appellate court when reviewing a criminal conviction.

On appeal, we view the evidence in the light most favorable to the verdict, Johnson no longer enjoys the presumption of innocence, and we determine the sufficiency of the evidence, but neither weigh the evidence nor judge the credibility of witnesses. *Grant v. State*, 195 Ga. App. 463, 464 (1) (393 SE2d 737) (1990). We defer to the jury's decision on the proper weight and credibility to be given the evidence, *Butler v. State*, 273 Ga. 380, 382 (1) (541 SE2d 653) (2001), because it is the jury's role "to choose what evidence to believe and what to reject." *Trammell v. State*, 253 Ga. App. 725, 726 (1) (560 SE2d 312) (2002). "As long as some competent evidence exists, even though contradicted, to support each fact necessary to make out the State's case, we will uphold the [jury's] verdict." (Citation and punctuation omitted.) *Childress v. State*, 251 Ga. App. 873, 876 (2) (554 SE2d 818) (2001). Moreover, the testimony of a single witness is sufficient to establish

a fact. OCGA § 24-4-8. In this case, the victim's testimony, standing alone, was sufficient to establish Johnson's guilt beyond a reasonable doubt within the meaning of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), but when coupled with the other evidence in the case the proof was overwhelming.

3. Johnson contends his defense counsel was ineffective within the meaning of *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), because he failed to investigate, depose, and call critical witnesses; did not object to the complainant being called "the victim" during the trial; did not hire his own polygraph examiner to refute the State's examiner; and failed to seek a balance of males and females on the jury.

To prevail on this claim, Johnson has the burden of establishing that his defense counsel's performance was deficient and the deficient performance prejudiced his defense. *Brown v. State*, 257 Ga. 277, 278 (2) (357 SE2d 590) (1987). In doing so, he had to show there was a reasonable probability the result of his trial would have been different but for his defense counsel's unprofessional deficiencies, *Baggett v. State*, 257 Ga. 735 (1) (363 SE2d 257) (1988), and he must overcome the strong presumption that the representation was effective. *Clarington v. State*, 178 Ga. App. 663, 667 (5) (344 SE2d 485) (1986). We will not reverse a trial court's findings regarding either the deficiency or prejudice prong of the *Strickland* test unless the finding is clearly erroneous. *Rose v. State*, 258 Ga. App. 232, 234-235 (2) (573 SE2d 465) (2002).

The trial court ruled that the defense counsel was not ineffective for not interviewing the similar transaction witnesses prior to trial because Johnson had not shown that the witnesses testified to any matters outside the scope of permissible testimony. The court further noted that "it is rare that counsel for a defendant charged with rape is afforded the opportunity to depose previous rape victims before trial." The court also found that in light of the overwhelming evidence against Johnson, the use of the term "victim" on two or three occasions is insignificant and did not contribute to the jury's verdict, and that the defense counsel's decision to attack the State's polygraph expert through cross-examination and not to call a polygraph expert in rebuttal so that he could save closing argument "was a matter of reasonable trial strategy and not inadequate preparation."

(a) Johnson argues that because of his defense counsel's inadequate preparation counsel was unable to impeach the witnesses against him because he failed to search, find, and interview the numerous witnesses who could have impeached their testimony. Johnson, however, does not identify these witnesses and made no proffer of the expected testimony. Moreover, although he complains that the defense counsel failed to take sworn statements from the

prosecution's witnesses, he does not state what these statements may have revealed, other than his hope that these statements would have cleared up confusion about what occurred. Such an argument is not sufficient to establish that a probability existed that the result of the trial might have been different if counsel had done so. Additionally, the defense counsel testified at the hearing on the motion for new trial that he was reluctant to call witnesses because he wanted to have "the last word with the jury."

(b) Pretermitting whether it was error for counsel to fail to object when the victim was twice referred to as such before Johnson was convicted, the trial court's ruling that it is highly unlikely that a reasonable probability exists that the outcome of his case would have been different but for his counsel's failure to object to the use of the word "victim" is not clearly erroneous. Moreover, the defense counsel testified that his theory was to show the prosecution was on a witch hunt against Johnson and not objecting to the State's witnesses use of the word "victim" reinforced his strategy of showing the State was "paranoid." Consequently, this was a matter of tactics and strategy, and whether wise or unwise did not constitute the ineffective assistance of counsel. *Luallen v. State*, 266 Ga. 174, 177 (3) (b) (465 SE2d 672) (1996), overruled on other grounds, *Clark v. State*, 271 Ga. 6, 10 (5) (515 SE2d 155) (1999).

(c) Johnson also contends his defense counsel was ineffective because he did not hire a defense polygraph examiner to rebut the State's examiner. At the motion for new trial hearing, Johnson's defense counsel testified that this was a matter of trial strategy to preserve his right to closing argument. He was prepared to and did cross-examine the State's expert to bring out the points he wanted to raise and felt the value of putting on a defense expert was outweighed by retaining the right to close. " 'Substantial latitude' is given during judicial review of trial counsel's decisions regarding trial strategy." (Citations omitted.) *Rivers v. State*, 271 Ga. 115, 118 (2) (b) (516 SE2d 525) (1999). Given the defense counsel's explanation for not hiring a polygraph examiner, we find no error.

(d) Johnson's allegation that his defense counsel was ineffective because he did not seek a proper balance of males and females on the jury is not properly before us because it is raised for the first time on appeal. This contention was not raised in Johnson's amended motion for new trial and no evidence or argument concerning it was presented at the hearing on Johnson's motion for new trial. "A defendant has an obligation to raise all allegations of ineffective assistance of counsel at the earliest practicable moment, and any allegation not raised is deemed waived. *Ponder v. State*, 260 Ga. 840 (400 SE2d 922) (1991)." *Hayes v. State*, 262 Ga. 881, 882 (2) (426 SE2d 886) (1993). Allegations of ineffectiveness raised on appeal that differ from those

supporting the original claim of ineffective assistance are deemed waived as they were not raised at the earliest practicable moment. Id.

Therefore, considering the totality of the trial and not just appellant's allegations of isolated errors, *Clarington v. State*, supra, 178 Ga. App. at 667, we are satisfied that Johnson has not met his burden under *Strickland v. Washington*, supra, of showing that his counsel's performance was deficient or that this deficient performance prejudiced his defense.

4. Johnson contends the trial court erred by admitting the testimony of three women who testified that Johnson raped them because the events were not similar, they did not result in convictions, and the evidence's prejudicial effect outweighed its probative value. Review of the transcript shows that all three women testified that they knew Johnson, and that he raped them after approaching them innocently. In each instance Johnson claimed that the sex was voluntary.

Our law does not require that the similar transaction evidence result in a criminal conviction before it is admissible. *Davis v. State*, 269 Ga. 276, 278 (2) (496 SE2d 699) (1998). Although some differences existed between the earlier attacks and the rape for which Johnson was on trial, the essential events of each incident were sufficiently similar to the crime charged in this case to authorize the admission of these women's testimony. "While Uniform Superior Court Rule 31.3 speaks [in terms] of 'similar' transactions, the issue of admissibility of extrinsic transactions has never been one of 'mere similarity.' It is, rather, 'relevance to the issues in the trial of the case.'" (Citations and punctuation omitted.) *Cole v. State*, 216 Ga. App. 68, 70 (1) (453 SE2d 495) (1994). In this case the evidence was admissible to rebut Johnson's claim that the victim in this case consented to having sex with him by showing that this was part of his pattern of committing crimes like this one. Here the similar transaction evidence tended to establish the charged offense by showing Johnson's course of conduct.

5. Johnson contends the trial court erred by denying his motion for a mistrial because a juror had contact with the prosecutor. The record shows that the matter Johnson complains of consisted of a juror asking for assistance from the prosecutor, in the presence of a bailiff, in resolving a child care problem. The prosecutor immediately brought this to the attention of the court, and informed the court that she had advised the juror that she needed to get the judge to address the problem, that the prosecutor could not help her, and that the defense counsel needed to be present. The trial court found that this encounter was harmless and denied the motion. We review a trial court's denial of a motion for a mistrial for an abuse of the court's discretion. *Underwood v. State*, 218 Ga. App. 530, 534 (3) (462 SE2d

434) (1995). This brief conversation is not the kind of contact between jurors and prosecutors that requires the grant of a mistrial, and, under these circumstances, the trial court did not abuse its discretion by denying Johnson's motion for a mistrial.

6. Johnson contends the trial court erred by sentencing him to serve a life sentence without parole because the Supreme Court of Georgia held in *State v. Ingram*, 266 Ga. 324, 326, n. 7[1] (467 SE2d 523) (1996), that a life sentence without parole was authorized only in cases in which the State first sought the death penalty. We must agree. OCGA § 16-6-1 (b) would seem to authorize this punishment because it states:

[a] person convicted of the offense of rape shall be punished by death, by imprisonment for life without parole, by imprisonment for life, or by imprisonment for not less than ten nor more than 20 years. Any person convicted under this Code section shall, in addition, be subject to the sentencing and punishment provisions of Code Sections 17-10-6.1 [Punishment for serious violent offenders] and 17-10-7 [Punishment of repeat offenders; punishment and eligibility for parole of persons convicted of fourth felony offense].

Nevertheless, in the Code section authorizing sentences to imprisonment for life without parole, OCGA § 17-10-16 (a), the General Assembly provided that "[n]otwithstanding any other provision of law, a person who is convicted of an offense committed after May 1, 1993, for which the death penalty may be imposed under the laws of this state may be sentenced to death, imprisonment for life without parole, or life imprisonment as provided in Article 2 of this chapter." Id. Article 2 of Chapter 10 of Title 17 of our Code is entitled "Death Penalty Generally" and OCGA § 17-10-30.1, governing imposition of sentences of imprisonment for life without parole, is found in that Article. Therefore, a sentence of life without parole is tied to the imposition of the death penalty, and, consequently, *State v. Ingram*, supra, excludes the possibility of the trial court imposing such a sentence in this case.

Accordingly, as Johnson was not otherwise eligible for imposition of this sentence, we must vacate this portion of the sentence and remand the case to the trial court for imposition of an appropriate sentence.

---

[1] "It follows that OCGA § 17-10-31.1 (a) excludes other offenses for which the death penalty may be authorized. See OCGA § 17-10-30 (a) and (b)."

7. The State concedes that Johnson also correctly contends the trial court erred by sentencing him to undergo chemical castration if he were ever to be released from prison. Our law only permits this punishment in cases when the person sentenced has been convicted of child molestation or aggravated child molestation. See OCGA §§ 16-6-4 (d) (2); 42-9-44.2 (a). Therefore, this sentence also must be vacated.

*Judgment affirmed in part and vacated in part and case remanded. Andrews, P. J., and Bernes, J., concur.*

DECIDED JULY 10, 2006.

*Mario S. Ninfo*, for appellant.

*W. Kendall Wynne, Jr., District Attorney, Layla V. Hinton, Assistant District Attorney*, for appellee.