A06A1267. BUCHANAN v. THE STATE.
(638 SE2d 436)

ADAMS, Judge.

Larry Buchanan appeals following his conviction by a jury of one count of aggravated battery and one count of obstruction or hindering an emergency telephone call. We affirm.

This matter arose out of an argument on February 4, 2003 between Larry Buchanan and his brother, Allen. Both men lived with their parents Milton and Alma, who were in their eighties. The argument began in the family's living room after Larry accused Allen of stealing some of his money and a pair of his sunglasses. When Milton heard his sons' raised voices, he came in from another room, saw them arguing and decided to call 911 before the situation escalated. Allen then left the room, and Larry noticed that Milton was using the phone. He pushed Milton to the floor and snatched the phone out of the wall. Allen heard his father crying for help. He loaded his shotgun and returned to the living room where he saw Larry standing over Milton. Allen told Larry to get away from his father and to leave the house. At Allen's request, their sister summoned police.

When Houston County Sheriff's Deputy Keith Edwards arrived, he observed blood on the corner of Milton's mouth and on his hand. Milton told Deputy Edwards that after Larry had knocked him to the floor, he kicked him several times. Milton was taken to a hospital, where he was treated by Dr. Guy Easterling. Milton told Dr. Easterling that his son had "jumped on him" and beaten him up. X-rays

revealed that Milton had sustained five broken ribs and a fractured collar bone from the incident. Dr. Easterling testified at trial that a substantial amount of force was required to inflict those injuries and that they were not consistent with a mere fall.

At the hospital Milton told his daughter, Wanda Hedden, that Larry "had fixed him up good," and told both Wanda and his son, Charles Buchanan, that he would never have the opportunity to do that again. He wondered how a son could treat his father in such a way. Charlotte Hyatt, one of the Buchanans' daughters, later came to stay with Milton while he recuperated, and her father told her repeatedly that Larry had pushed him down and beaten him up.

Nevertheless, at trial Milton testified that he had simply lost his balance when Larry pushed him and he denied that Larry struck him. He stated that he sustained his injuries when he hit a table.

1. Larry Buchanan contends that the trial court erred in allowing hearsay testimony from his siblings, Charles, Wanda and Charlotte, regarding their father's statements about the incidents. He asserts that the state failed to lay the proper foundation for this testimony.

For a prior inconsistent statement to be admissible, three requirements must be met:

> First, the prior statement must contradict or be inconsistent with the witness's in-court testimony; second, the prior statement must be relevant to the case; and, third, the examining attorney must lay the proper foundation with the witness. The purpose of the foundation requirement is to give the witness an opportunity to admit, explain, or deny the prior contradictory statement.

(Footnotes omitted.) *Duckworth v. State*, 268 Ga. 566, 567-568 (1) (492 SE2d 201) (1997). See also OCGA § 24-9-83. The proper foundation is laid for a prior inconsistent statement when a witness denies that a statement was made. *Hawkins v. State*, 195 Ga. App. 739, 740 (4) (395 SE2d 251) (1990). Where "the witness provides relevant testimony that tends to contradict the prior statement, such prior inconsistent statement is properly admitted as substantive evidence." (Footnote omitted.) *Claritt v. State*, 280 Ga. App. 384, 385 (1) (634 SE2d 81) (2006).

Here, the statements at issue contradicted Milton's in-court testimony and were certainly relevant. Moreover, Milton denied making these statements. He testified that he told police, the doctor and "everybody" that his injuries were the result of an accident. In particular, he stated that the doctor misunderstood what he meant when he said that Larry was the "cause" of his injuries. Milton meant that it was an accident, not that Larry intended to harm him. While this testimony was elicited on cross-examination, we find that it was

sufficient to support the purposes behind the foundational requirement that the witness be given the opportunity to admit, explain or deny the prior statements.

And because the three requirements for admissibility were met, we find no error in the admission of the siblings' testimony. See *Meeks v. State*, 281 Ga. App. 334 (636 SE2d 77) (2006); *Williams v. State*, 280 Ga. 539, 541 (1) (630 SE2d 410) (2006); *Scott v. State*, 261 Ga. App. 341, 343 (1) (582 SE2d 510) (2003).

2. Buchanan next asserts that the evidence was insufficient to support his convictions. On appeal, this Court will not weigh the evidence or determine witness credibility. "Instead, we construe the evidence in the light most favorable to the verdict to determine whether it was sufficient to authorize a rational trier of fact to find [Buchanan] guilty of these offenses beyond a reasonable doubt." (Footnote omitted.) *Morgan v. State*, 277 Ga. App. 670, 671-672 (1) (627 SE2d 413) (2006).

The evidence showed that Buchanan pushed Milton down and pulled the telephone out of the wall to prevent him from calling 911. Milton later told police, the doctor who treated his injuries and his other children that his son, Larry, had beaten him. Moreover, the evidence showed that Milton's injuries were consistent with his original statements that Larry had beaten him and were not consistent with his testimony at trial that he was injured when he fell against furniture. This evidence was sufficient to support Buchanan's convictions. See *Meeks v. State*, 281 Ga. App. at 336. See also OCGA §§ 16-5-24 and 16-10-24.3.

3. Buchanan further contends that the trial court erred in refusing to allow Milton's written statement to go out with the jury during their deliberations. Milton signed the written document, which stated that he fell and that Larry never hit him and which was prepared by an investigator for the public defender's office on March 24, 2003. Buchanan's attorney requested that this statement be sent out with the jury, but the trial court denied the request.

In Georgia, the continuing witness rule is based on the idea that written testimony is heard by the jury when read by a witness, just as oral testimony is heard when a witness testifies. *Mathews v. State*, 258 Ga. App. 29, 31 (1) (572 SE2d 719) (2002). "But, it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once." (Citation omitted.) Id. Courts generally apply this rule "to testimonial documentary evidence such as affidavits, depositions, written confessions, statements and dying declarations." (Citation omitted.) *Rasch v. State*, 260 Ga. App. 379, 385 (2) (579 SE2d 817) (2003). While the statement in this case was not directly read to the jury, Buchanan's attorney thoroughly covered

the substance of the statement in his examination of both Milton and the investigator who wrote the statement. Accordingly, we find no error in the trial court's decision to prevent this evidence from going out with the jury. *Broadnax-Woodland v. State*, 265 Ga. App. 669, 670 (595 SE2d 350) (2004) (allowing prior consistent statement to go out with the jury violated the continuing witness rule).[1]

4. Buchanan next asserts that the trial court erred in denying his motion for mistrial based on the prosecutor's use of a Biblical reference in her closing argument, relying upon cases holding that such references may constitute reversible error during the sentencing phase in capital cases. See, e.g., *Carruthers v. State*, 272 Ga. 306, 308-311 (2) (528 SE2d 217) (2000).

But even in capital cases, our Supreme Court has held that passing religious references may not be so prejudicial as to require resentencing. "[C]ounsel may bring to his use in the discussion of the case well-established historical facts and may allude to such principles of divine law relating to transactions of men as may be appropriate to the case." (Citation and punctuation omitted.) *Hill v. State*, 263 Ga. 37, 45-46 (19) (427 SE2d 770) (1993). See also *Lewis v. State*, 277 Ga. 534, 537-538 (2) (592 SE2d 405) (2004).

Here, the prosecutor made reference to the commandment to "honor thy father and mother," and included that phrase on a slide in a Power-Point presentation to the jury. The record shows that Buchanan's objection occurred more than ten transcript pages after this reference was made, but he contends that the reference remained on the screen for the jury to see. Buchanan's attorney again objected at the close of the prosecutor's argument. Following a conference, the trial court gave curative instructions directing the jury that the only law they could apply was Georgia law.

After reviewing the record, including the demonstrative slide and the curative instructions, we conclude that the trial court did not abuse its discretion in denying Buchanan's motion for mistrial. See *Lewis v. State*, 277 Ga. at 537-538 (2). See also *Johnson v. State*, 280 Ga. App. 341, 345 (5) (634 SE2d 134) (2006) (abuse of discretion standard applies).

*Judgment affirmed. Blackburn, P. J., and Mikell, J., concur.*

---

[1] While this Court has refused to find reversible error for a violation of this rule where the statement is consistent with the defendant's theory of the case, *Bridges v. State*, 279 Ga. 351, 353 (2) (613 SE2d 621) (2005); *Heard v. State*, 169 Ga. App. 609 (314 SE2d 451) (1984), these cases do not alter the rule's requirement that the statements should not have gone into the jury room in the first place. See, e.g., *Heard v. State*, 169 Ga. App. at 609.

DECIDED NOVEMBER 7, 2006.

*Jeffrey L. Grube*, for appellant.
*Kelly R. Burke, District Attorney, Timothy M. Marlow, Assistant District Attorney*, for appellee.