## A08A1587. STONE v. THE STATE.
### (674 SE2d 31)

DOYLE, Judge.

Following a jury trial, Raymond Stone appeals his conviction of family violence aggravated assault,[1] terroristic threats,[2] family violence simple battery,[3] and obstruction of a 911 call.[4] Stone challenges the denial of his motion for new trial, arguing that the trial court erroneously admitted statements he made during a custodial interview initiated by an investigator after Stone's initial appearance before a magistrate. Because Stone's Sixth Amendment right to counsel had attached at the initial appearance, and because Stone did not initiate the custodial interview, we must reverse. Because the evidence sufficed to support the conviction, the case may be retried.[5]

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and [the defendant] no longer enjoys a presumption of innocence; moreover, an appellate court . . . does not weigh the evidence or determine witness credibility.[6]

So viewed, the evidence shows that during an argument with his live-in girlfriend, Stone dragged her off the couch by her hair and threw a table at her. The girlfriend soon fled the residence on foot, calling 911 on her cell phone, while Stone pursued in his truck. As the girlfriend requested help from the 911 operator, Stone reached her, held a knife to her, and threatened to kill her as another vehicle approached. When the vehicle neared, Stone fled in his truck. The girlfriend was picked up by the passing motorist, who took her to a

---

[1] OCGA § 16-5-21 (a) (2), (j).

[2] OCGA § 16-11-37 (a).

[3] OCGA § 16-5-23 (a) (2), (f).

[4] OCGA § 16-10-24.3.

[5] See *Lively v. State*, 262 Ga. 510, 512 (3) (421 SE2d 528) (1992) (retrial permitted). See also *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979) (sufficiency of the evidence); *Jones v. State*, 289 Ga. App. 219, 221 (1) (656 SE2d 556) (2008) (family violence aggravated assault); *Moran v. State*, 293 Ga. App. 279, 283 (2) (b) (666 SE2d 726) (2008) (terroristic threats); *Cobble v. State*, 259 Ga. App. 236, 237 (1) (576 SE2d 623) (2003) (family violence battery); *Buchanan v. State*, 282 Ga. App. 298, 300 (2) (638 SE2d 436) (2006) (obstruction of a 911 call).

[6] (Punctuation omitted.) *Eady v. State*, 256 Ga. App. 696 (569 SE2d 603) (2002).

gas station where a sheriff's deputy met her.

Stone was charged with and found guilty of family violence aggravated assault, terroristic threats, family violence simple battery, and obstruction of a 911 call.[7] Following the denial of his motion for new trial, Stone filed this appeal.

Stone contends that the trial court violated his Sixth Amendment right to counsel by admitting a recorded custodial statement he made to an investigator following his initial appearance with a public defender before a magistrate. Because Stone's Sixth Amendment right attached at the initial appearance, we must agree.

"Where a defendant asserts his right to counsel at his initial appearance, his Sixth Amendment right to counsel attaches[, and i]n order for [a defendant's] subsequent statement . . . to be admissible, *[the defendant] must have initiated* further contact with the police."[8] Here, following his arrest, Stone appeared before a magistrate (via jailhouse video feed) and, at his request, was represented by a public defender. Stone filled out several forms provided by the public defender. On one form, prior to the hearing, the following statement was marked: "I wish for the Public Defender to represent me on my first appearance only." Based on that request, an assistant public defender represented Stone as he unsuccessfully sought bond at his initial appearance before the magistrate. Shortly after the appearance, a second statement on the same form was marked: "I wish for the Public Defender to represent me in my first appearance and in any other hearings relating to this case."

That same day, after filling out a separate application for public defender services, Stone signed a form entitled "Notice of Application Fee," which informed Stone of the county's authority to charge a fee to applicants for legal services and of Stone's right to request a waiver of the fee. Finally, Stone personally signed a "Motion for Waiver of Application Fee" in which he sought a court order waiving the fee.

The next day, Stone was interviewed at the jail by an investigator from the district attorney's office. During that interview, which was recorded and played at trial, Stone made statements that in part corroborated prejudicial evidence presented by the State, including Stone's illegal drug use on the night of the incident and the occurrence of a violent argument at the residence. Stone now challenges the admissibility of the recorded interview.

Under the facts of this case, including Stone's written requests

---

[7] Stone was found not guilty of separate counts of family violence aggravated assault, terroristic threats, false imprisonment, and arson.

[8] (Citation omitted; emphasis supplied.) *Vergara v. State*, 283 Ga. 175, 181 (2) (657 SE2d 863) (2008). See *Michigan v. Jackson*, 475 U. S. 625, 626 (106 SC 1404, 89 LE2d 631) (1986).

for counsel and his appearance before a magistrate while represented (pursuant to his request) by a public defender, we cannot hold that Stone failed to assert his right to counsel for purposes of the Sixth Amendment. "Whatever else it may mean, the right to counsel granted by the Sixth and Fourteenth Amendments means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him. . . ."[9]

The trial court, in ruling that Stone failed to assert his right to counsel, erroneously relied on *State v. Hatcher*,[10] which held that an "eligibility affidavit form" provided by police at the jailhouse as a "housekeeping measure" did not constitute an invocation of the right to counsel for *Fifth Amendment* purposes, i.e., whether the defendant had invoked his right to counsel for *Miranda* purposes in the context of a custodial interrogation prior to a first appearance.[11] However, with respect to the *Sixth Amendment* right to counsel during critical stages of adversarial proceedings, *Hatcher* held that the same form *did* constitute "a request for court-appointed counsel once judicial proceedings were initiated for Sixth Amendment purposes. . . ."[12] In so holding, the Court in *Hatcher* emphasized that because the defendant in that case had filled out the form at the jailhouse prior to any adversarial criminal proceeding, no *Sixth Amendment* right to counsel had attached.[13]

Here, by contrast, Stone's Sixth Amendment right had attached because he had sought representation by a public defender and appeared with a public defender at his initial appearance hearing before a magistrate. As made clear by the Supreme Court of Georgia, "an initial appearance hearing, although often not a critical stage of a criminal proceeding in its own right requiring the actual presence of a defense attorney, is a formal legal proceeding wherein the Sixth Amendment right to counsel attaches."[14] Because Stone made at least two written requests for representation and was represented by the requested counsel during his initial appearance before the magistrate, we conclude that Stone's Sixth Amendment right to counsel had attached.

Therefore, we next address the admissibility of Stone's subsequent custodial interrogation in light of Stone's Sixth Amendment

[9] *O'Kelley v. State*, 278 Ga. 564, 565 (2) (604 SE2d 509) (2004).

[10] 264 Ga. 556 (448 SE2d 698) (1994).

[11] See id. at 558; *Edwards v. Arizona*, 451 U. S. 477, 484-485 (II) (101 SC 1880, 68 LE2d 378) (1981).

[12] *State v. Hatcher*, supra, 264 Ga. at 557.

[13] See id.

[14] (Citation omitted.) *O'Kelley v. State*, supra, 278 Ga. at 567.

right to counsel. The United States Supreme Court has held

> that interrogation is a "critical stage" of a defendant's criminal proceeding to which the Sixth Amendment right to counsel, once that right has attached, applies. That Court has also determined that the Sixth Amendment right to counsel, once attached, cannot be waived by the defendant during questioning that is initiated by interrogators.[15]

Because we have determined that Stone's Sixth Amendment right to counsel attached at his initial appearance, and because the uncontested evidence shows that Stone did not initiate the subsequent custodial interrogation, we must conclude that the trial court erroneously admitted the custodial statement at trial. Furthermore, as we cannot say that the evidence did not contribute to the jury's verdict, we must reverse the trial court's denial of Stone's motion for a new trial.[16]

Stone's remaining enumeration is moot.

*Judgment reversed. Andrews, P. J., and Bernes, J., concur.*

ON MOTION FOR RECONSIDERATION.

On Motion for Reconsideration, the State, while conceding Appellant Stone's "right to counsel" attached at his first appearance hearing and that Stone did not initiate the subsequent custodial interview, argues that the Appellant did not "invoke" his Sixth Amendment rights to any State actor and thus the statements obtained from Appellant by the domestic violence investigator during the custodial interview were properly admitted into evidence. The State relies heavily on *State v. Hatcher*,[17] where the Supreme Court of Georgia held that the mere filling out of an application for representation by a public defender does not constitute the invocation of a right to counsel for Fifth Amendment purposes. At the time that Hatcher filled out the application, however, he had not been indicted and was doing so at the jailhouse "as a housekeeping measure" as part of the initial booking process. Thus, the Supreme Court in *Hatcher* found that the right to counsel *for Sixth Amend-*

---

[15] Id. at 568. See *Michigan v. Jackson*, supra, 475 U. S. at 629-630 (II) ("[t]he Sixth Amendment guarantee of the assistance of counsel also provides the right to counsel at postarraignment interrogations. The arraignment signals the initiation of adversary judicial proceedings and thus the attachment of the Sixth Amendment; thereafter, government efforts to elicit information from the accused, including interrogation, represent 'critical stages' at which the Sixth Amendment applies") (citations and punctuation omitted).

[16] See *Bly v. State*, 283 Ga. 453, 460 (3) (660 SE2d 713) (2008).

[17] 264 Ga. 556, 558 (448 SE2d 698) (1994).

*ment purposes* had not attached at the time Hatcher gave the incriminating statements, i.e., after the booking procedure and filling out the "eligibility affidavit form" but before adversarial criminal proceedings had been initiated against him.[18]

Here, at the time of interrogation, Stone had already had his initial appearance before the magistrate, where he was represented at his request by a public defender and he had indicated (by filling out several forms) his desire to be represented in his first appearance and "in any other hearings relating to this case." The United States Supreme Court made clear in *Rothgery v. Gillespie County*,[19] that an accused's Sixth Amendment right to counsel attaches at the first appearance hearing regardless of whether the prosecutor is aware of the proceedings or not. The purpose of this Sixth Amendment guarantee to counsel and the purpose of invoking it is to "protect the unaided layman at critical confrontations with its expert adversary, the government, *after* the adverse positions of government and defendant have solidified with respect to a particular alleged crime."[20]

Once the Sixth Amendment right to counsel has attached and been invoked, any subsequent waiver during a police initiated custodial interview is ineffective. In *McNeil v. Wisconsin*, the Court held it was proper for the police to interrogate McNeil regarding other crimes for which he had been charged after he waived his Fifth Amendment rights, even though his Sixth Amendment rights had attached for a different crime. However, the court noted that it was clear and undisputed that McNeil's Sixth Amendment right had attached and been invoked with respect to the specific offense for which he had been formally charged.[21] Thus, the police could not have engaged in further interrogation of McNeil regarding that specific offense.[22]

The State points to the distinction between the Sixth Amendment right attaching and it being invoked. Under the facts of the instant case, however, Stone's Sixth Amendment right to counsel had attached at his initial appearance, and he had invoked his right when he indicated his desire to be represented and was in fact represented at the initial appearance. Therefore, because Stone

---

[18] See *Hatcher*, 264 Ga. at 558.

[19] ___ U. S. ___ (128 SC 2578, 2590, 171 LE2d 366) (2008) ("an initial appearance following a charge signifies a sufficient commitment to prosecute regardless of a prosecutor's participation").

[20] (Punctuation omitted; emphasis in original.) *McNeil v. Wisconsin*, 501 U. S. 171, 177-178 (111 SC 2204, 115 LE2d 158) (1991).

[21] See id. at 175.

[22] See id. at 175-176.

requested and was represented by counsel at the first appearance, and because Stone did not initiate the subsequent interrogation, his Fifth Amendment waiver was ineffective.[23] Accordingly, we deny the motion for reconsideration.

*Motion for reconsideration denied.*

DECIDED JANUARY 27, 2009 —
RECONSIDERATION DENIED FEBRUARY 26, 2009

*Michael R. McCarthy, Benjamin D. Goldberg*, for appellant.
*Kermit N. McManus, District Attorney, Benjamin B. Kenemer, Assistant District Attorney*, for appellee.

---

[23] *Michigan v. Jackson*, 475 U. S. 625, 635 (106 SC 1404, 89 LE2d 631) (1986) ("Just as written waivers are insufficient to justify police-initiated interrogations after the request for counsel in a Fifth Amendment analysis, so too they are insufficient to justify police-initiated interrogations after the request for counsel in a Sixth Amendment analysis").