S96A0158. THE STATE v. INGRAM et al.
(467 SE2d 523)

HUNSTEIN, Justice.

Kimjon Ingram, Cassandra Hefflin, Geneva Haith and Christopher Wolfe were jointly charged with two counts of murder, two counts of felony murder, aggravated assault, arson in the first degree and possession of an explosive device stemming from the July 1994 fire-bombing deaths of two young children and injury to their mother. Following the joint indictment, the State filed notices of intent pursuant to OCGA §§ 17-10-16 and 17-10-30.1 to seek imprisonment for life without parole[1] but did not give notice of an intent to seek the death

---

[5] The trial court did not reach the issue of the 1977 rezoning on this case and we intimate no opinion thereon.
[1] "[L]ife without parole" means that the defendant shall be incarcerated for the remainder of his or her natural life and shall not be eligible for parole unless such

penalty.[2] Appellees filed pre-trial motions contesting the State's election to seek life without parole when notification of intent to seek the death penalty had not been issued and the death penalty was not being sought as an alternative sentence. The trial court granted appellees' motions. We granted interlocutory review and affirm the trial court's order that a sentence of life without parole is an alternative sentence to a sentence of death, dependent upon the State also seeking the death penalty.

The State contends that the trial court erred in granting appellees' motions, focusing solely on OCGA § 17-10-16 (a) as authority for a sentence of life without parole independent of the State seeking the death penalty. To resolve this matter we must look to the intent of the Legislature in enacting Ga. L. 1993, p. 1654 (hereinafter "the Act"). OCGA § 1-3-1 (a).

It is well established that the intent of the Legislature in adopting any part of an act *"must* be obtained from a consideration of the Act as a whole. [Cits.]" (Emphasis supplied.) *Ford Motor Co. v. Carter*, 239 Ga. 657, 661 (238 SE2d 361) (1977). See also *Ellis v. Johnson*, 263 Ga. 514 (1) (435 SE2d 923) (1993).

> [S]tatutes are not to be construed in a vacuum, but in relation to other statutes of which they are a part, and all statutes relating to the same subject-matter are to be construed together, and harmonized wherever possible.

*East West Express v. Collins*, 264 Ga. 774, 775 (449 SE2d 599) (1994).

In the Act, the Legislature amended two Code sections by inserting "life without parole" as a third sentencing option,[3] and created four new Code sections within Chapter 10 of Title 17.[4] It is apparent from a review of these statutes that they represent a coherent statutory plan whereby death penalty provisions are and must be utilized in order to implement the life without parole sentencing option. In pertinent part the four new Code sections provide as follows: OCGA § 17-10-16 (a) sets forth that a person convicted of an offense committed after May 1, 1993, for which the death penalty may be

---

person is subsequently adjudicated to be innocent of the offense for which he or she was sentenced.
OCGA § 17-10-31.1 (d) (1). See also OCGA § 17-10-16 (b).

  [2] Uniform Superior Court Rule 34, Unified Appeal Rule II (A) (1) provides that the prosecuting attorney must file with the clerk of the superior court a written notice of an intention to seek the death penalty.

  [3] Ga. L. 1993, p. 1654, §§ 1 and 2, amending OCGA §§ 17-10-1 and 17-10-2.

  [4] Ga. L. 1993, p. 1643, §§ 3, 4, 5 and 6 created OCGA §§ 17-10-16; 17-10-30.1; 17-10-31.1 and 17-10-32.1. These latter three statutes are all codified in the death penalty article.

imposed "may be sentenced to death, imprisonment for life without parole, or life imprisonment *as provided in Article 2 of this chapter*."[5] (Emphasis supplied.) OCGA § 17-10-30.1 (a) provides that a sentence of life without parole applies to murder cases in which the court or the jury finds one or more statutory aggravating circumstances.[6] OCGA § 17-10-31.1 (a) creates three threshold requirements for imposition of a sentence of life without parole by a jury: (a) the defendant must be convicted of murder;[7] (b) the jury must include a finding of one statutory aggravating circumstance; and (c) the jury must affirmatively recommend life without parole.[8] Pursuant to OCGA § 17-10-32.1, defendants who enter a guilty plea after indictment for an offense for which the death penalty or life without parole may be imposed, may be sentenced to life imprisonment, id. at (a); however, where the State has filed a notice of intent to seek the death penalty and a statutory aggravating circumstance exists, the judge may sentence a defendant to death or life without parole. Id. at (b).

We conclude from a consideration of the Act as a whole that the Legislature intended the sentence of life without parole be considered and imposed only when seeking the death penalty. This conclusion is further reinforced by Section 9 of the Act, which expressly provides that "[n]o person shall be sentenced to life without parole unless such person could have received the death penalty under the laws of this state . . . ." The unavoidable result of the legislative enactment is to bar the State from seeking life without parole unless the State has filed a notice of intent to seek the death penalty.

By enacting Ga. L. 1993, p. 1654, the Legislature enhanced the sentencing scheme for offenses for which the death penalty could be imposed by adding a third sentencing option of life without parole for punishment in capital murder cases. Although it is true, as asserted by the State, that life without parole is limited to cases where the defendant is convicted of murder, that limitation is consistent with the statutory scheme to provide a third sentencing option in capital murder cases, where no alternative before existed between life with the possibility of parole or death. While permitting the State to seek a sentence of life without parole outside the context of a death pen-

---

[5] Article 2, captioned "Death Penalty Generally," applies only in death penalty cases and sets forth the procedure for imposition of the death penalty.

[6] It is only in cases where the State seeks the death penalty that juries are required to find the statutory aggravating circumstances pursuant to OCGA § 17-10-30 (b).

[7] It follows that OCGA § 17-10-31.1 (a) excludes other offenses for which the death penalty may be authorized. See OCGA § 17-10-30 (a) and (b).

[8] In the instance where the jury finds at least one statutory aggravating circumstance, but fails to reach a unanimous verdict as to the sentence, the judge is authorized to dismiss the jury and at his option, impose sentence of either life imprisonment or life without parole; the judge has no authority to impose a sentence of death. OCGA § 17-10-31.1 (c).

alty case may allow, as the State asserts, for a logical alternative in aggravated murder cases where factors exist that militate against seeking the death penalty, that matter is best raised before the Legislature.

Because the sentence of imprisonment for life without parole is inapplicable in this case, the trial court correctly refused to allow the State to seek impermissibly a sentence of life without parole without also seeking the death penalty. Accordingly, the trial court did not err by granting appellees' motions.

*Judgment affirmed. All the Justices concur, except Carley, J., who dissents.*

CARLEY, Justice, dissenting.

It is clear that a sentence of life without parole is an *alternative* to a sentence of death, since OCGA § 17-10-16 (a) unambiguously provides that one who is convicted of an offense for which "the death penalty may be imposed under the laws of this state may be sentenced to death, imprisonment for life without parole, *or* life imprisonment as provided in Article 2 of this chapter." (Emphasis supplied.) However, the issue presented for resolution in this case is whether an effort by the State to obtain the death penalty is a *prerequisite* to its effort to obtain the alternative sentence of life without parole. The trial court held that the State cannot seek a sentence of life without parole independently of the death penalty. The majority affirms that holding, concluding that a sentence of life without parole is "dependent upon the State also seeking the death penalty." In my opinion, the State is authorized to seek a sentence of life without parole independently of the death penalty and that sentence is not, therefore, dependent upon the State also seeking the death penalty. Accordingly, I must respectfully dissent to the majority's affirmance of what I perceive to be an erroneous judgment of the trial court.

Ga. L. 1993, p. 1654 et seq. is the controlling statutory provision regarding a sentence of life without parole. In authorizing the imposition of such a sentence in this state, the 1993 enactment made several amendments to Chapter 10 of Title 17 of the Code. As the majority correctly notes, the existing general sentencing provisions of OCGA §§ 17-10-1 and 17-10-2 were amended "by inserting 'life without parole' as a third sentencing option. . . ." However, these amendments to OCGA §§ 17-10-1 and 17-10-2 are consistent with "life without parole" being an independent alternative third sentencing option. The majority cites nothing in those amendments which purports to establish that the State's effort to obtain the death penalty is a prerequisite to the imposition of a sentence of life without parole.

The majority likewise correctly notes that the 1993 enactment also "created four new Code sections within Chapter 10 of Title 17."

Those four new Code sections are OCGA §§ 17-10-16; 17-10-30.1; 17-10-31.1 and 17-10-32.1 According to the majority at 325,

> [i]t is apparent from a review of these statutes that they represent a coherent statutory plan whereby death penalty provisions are and must be utilized in order to implement the life without parole sentencing option.

Contrary to the majority, it is apparent from my review of these statutes that they do not represent such a statutory plan.

As previously noted, OCGA § 17-10-16 (a) provides that one who is convicted of an offense for which "the death penalty may be imposed under the laws of this state may be sentenced to death, imprisonment for life without parole, or life imprisonment *as provided in Article 2 of this chapter.*" (Emphasis supplied.) Since Article 2 relates to the "Death Penalty Generally," the majority apparently construes OCGA § 17-10-16 (a) as an expression of the legislative intent that a sentence of life without parole can be considered and imposed only when the State is seeking the death penalty. However, OCGA §§ 17-10-30.1; 17-10-31.1 and 17-10-32.1 *also* appear in Article 2 of Chapter 10 of Title 17. While OCGA §§ 17-10-30; 17-10-31 and 17-10-32 relate exclusively to the imposition of the death penalty, OCGA §§ 17-10-30.1; 17-10-31.1 and 17-10-32.1 relate exclusively to the imposition of the sentence of life without parole. The mere fact that the General Assembly codified the statutory provisions regarding the sentence of life without parole in the same article as those regarding the death penalty does not indicate a legislative intent that the State's effort to obtain the latter is a prerequisite to the imposition of the former. If that had been the legislative intent, the General Assembly presumably would not have enacted entirely new statutory provisions which relate exclusively to the imposition of the sentence of life without parole, but merely would have amended the existing statutory provisions relating to the death penalty so as to specify that the State's effort to obtain that sentence was a prerequisite to its effort to obtain the sentence of life without parole. I believe that, by enacting entirely new statutory provisions which relate exclusively to the imposition of the sentence of life without parole and by codifying those statutory provisions in the same article as that which contains the statutory provisions relating to the death penalty, the General Assembly intended no more than that the sentence of life without parole be considered as an independent alternative sentence to the death penalty. Thus, insofar as OCGA § 17-10-16 (a) authorizes the sentences of death, life without parole, or life "as provided in Article 2 of this chapter," it is the provisions of OCGA §§ 17-10-30; 17-10-31 and 17-10-32 which relate to the sentence of death and the independent pro-

visions of OCGA §§ 17-10-30.1; 17-10-31.1 and 17-10-32.1 which relate to the sentence of life without parole.

The death penalty "may be imposed under the laws of this state" for the offense of murder and, "as provided in Article 2" of Chapter 10 of Title 17, the sentence of life without parole may be imposed "in any murder case in which there is found by the court or jury one or more statutory aggravating circumstances as defined by Code Section 17-10-30." OCGA § 17-10-30.1 (a). The majority states in fn. 6 that "[i]t is only in cases where the State seeks the death penalty that juries are required to find the statutory aggravating circumstances pursuant to OCGA § 17-10-30 (b)." However, the majority cites no authority to support its conclusion that the issue of the existence of the statutory aggravating circumstances enumerated in OCGA § 17-10-30 is limited to a case wherein the death penalty is being sought. OCGA § 17-10-30.1 itself certainly does not support that conclusion. By its terms, OCGA § 17-10-30.1 (a) requires only a finding of one or more of the statutory aggravating circumstances "as defined by Code Section 17-10-30." OCGA § 17-10-30.1 does not require that that finding be made in the context of a case wherein the death penalty is being sought. Obviously, a statutory aggravating circumstance "as defined by Code Section 17-10-30" may be found in a case in which the State is not seeking the death penalty. All that is required is that the issue of the existence of a statutory aggravating circumstance "as defined by Code Section 17-10-30" be submitted to the factfinder. By construing OCGA § 17-10-30.1 as limiting the State's effort to obtain a sentence of life without parole to a case wherein the State also seeks to obtain the death penalty, the majority erroneously ignores the actual wording of that enactment.

The majority at 326 does correctly note that OCGA § 17-10-31.1 (a) "creates three threshold requirements for imposition of a sentence of life without parole by a jury. . . ." However, one of those three requirements is not that the State also be seeking the imposition of the death penalty. OCGA § 17-10-32.1, on the other hand, does specifically mandate that, when the sentence is to be imposed by the trial court pursuant to a guilty plea rather than determined by the jury after a trial, a sentence of life without parole cannot be pronounced unless the State has given notice of its intent "to seek the death penalty pursuant to the Uniform Rules of the Superior Courts. . . ." Thus, in this limited situation, the State's effort to obtain the death penalty is a prerequisite to its effort to obtain the sentence of life without parole. If the General Assembly had intended that the State's effort to obtain the death penalty be a prerequisite to its effort to obtain the sentence of life without parole in all circumstances, it presumably would not have limited that requirement to cases involving guilty pleas. The absence of a comparable limitation in either OCGA

§§ 17-10-30.1 or 17-10-31.1 evidences the legislative intent that such a requirement is not applicable in cases which are to be tried before a jury or before the court.

As the majority further notes, the uncodified Section 9 of the 1993 enactment provides that "[n]o person shall be sentenced to life without parole unless such person could have received the death penalty under the laws of this state. . . ." Under the laws of this state, however, a person who is convicted of murder can receive the death penalty. The requirement that the State give notice of its intent to seek the death penalty is not a requirement of the laws of this state, but of the Uniform Rules of the Superior Court. The only law of this state which mandates the giving of notice of the State's intent to seek the death penalty in connection with the imposition of the sentence of life without parole is OCGA § 17-10-32.1. That statute is inapplicable here, because appellees have not entered pleas of guilty to the murders they are charged with committing.

Life without parole represents a viable independent sentencing alternative in a murder case wherein the State determines that, although aggravating circumstances exist, the death penalty may not otherwise be authorized. Moreover, if the sentence of life without parole can be sought in a non-death penalty murder case, the State can avoid the delay, complexity and expense of complying with requirements applicable only to death-penalty cases, such as the Unified Appeal Procedure and the empaneling of a death-qualified jury. See *Witherspoon v. Illinois*, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968); *Wainwright v. Witt*, 469 U. S. 412 (105 SC 844, 83 LE2d 841) (1985). Indeed, the majority at pp. 326-327 concedes that permitting the State to seek a sentence of life without parole in the context of a non-death penalty case "may allow . . . for a logical alternative in aggravated murder cases," but nevertheless concludes that "that matter is best raised before the Legislature." I respectfully submit that the "matter" already has been raised and resolved by the General Assembly and that the majority opinion frustrates the existing legislative intent in that regard. Under the majority opinion, life without parole is not an independent alternative sentencing option in a murder case with aggravating circumstances and the time consuming and expensive compliance with death-penalty procedures cannot be avoided even though the State determines that the death penalty is not authorized in that particular case. It is my belief, however, that under the existing statutory provisions, the sentences of death and life without parole are alternative, and that seeking the former is not a prerequisite to the imposition of the latter where, as here, no guilty pleas have been entered to the murder charges. Accordingly, I must respectfully dissent.

DECIDED MARCH 4, 1996.

*Lewis R. Slaton, District Attorney, Carl P. Greenberg, Assistant District Attorney,* for appellant.

*Drew Findling, Anna Blitz, R. David Botts, John L. Hulsey, Jr., Elizabeth Rankin,* for appellees.

*Michael J. Bowers, Attorney General, Davis, Zipperman, Kirschenbaum & Lotito, Nicholas A. Lotito, Jackson & Schiavone, G. Terry Jackson,* amici curiae.