300 Ga. 516
FINAL COPY

S16A1610.  KIMBROUGH v. THE STATE.

NAHMIAS, Justice.

Benny Kimbrough appeals the trial court's order denying his 2015 motion to vacate as void his sentence of life in prison without the possibility of parole, which was imposed under OCGA § 17-10-7 (b) for a murder he committed in 2004 after being convicted of kidnapping in Florida in 1994.  We affirm.

1.  On February 24, 2005, a Clayton County grand jury indicted Kimbrough for malice murder and other crimes in connection with the strangling death of Ramatoulie Demba in July 2004.  On February 1, 2006, the State filed a notice to have Kimbrough sentenced as a recidivist under OCGA § 17-10-7.  At a trial from February 13 to 20, 2006, the jury found Kimbrough guilty on all counts, and on March 7, 2006, he was sentenced to serve life in prison without the possibility of parole for the murder pursuant to OCGA § 17-10-7 (b) due to his prior conviction in Florida for kidnapping.[1]  In April 2007,

---

[1]  Kimbrough's 2006 sentence also included a consecutive term of ten years in prison for theft by taking a motor vehicle; that part of his sentence is not at issue in this proceeding.

this Court affirmed Kimbrough's convictions on direct appeal. See Kimbrough v. State, 281 Ga. 885 (644 SE2d 125) (2007).

More than eight years later, in August 2015, Kimbrough filed a motion to correct void sentence, arguing that his sentence of life without parole for murder was void under the sentencing scheme in effect at the time of Demba's murder. Kimbrough claimed that Georgia law in 2004 did not authorize a sentence of life without parole for capital felonies like murder and, alternatively, that the State's filing of a notice of intent to seek the death penalty was a prerequisite to a sentence of life without parole for murder. On November 18, 2015, the trial court denied Kimbrough's motion. He then filed this appeal.

2. Kimbrough first contends that his sentence of life without parole is void under Funderburk v. State, 276 Ga. 554 (580 SE2d 234) (2003). Funderburk was sentenced to life without parole pursuant to OCGA § 17-10-7 (c), a recidivist provision applying to fourth-time felony offenders, for a murder that occurred in January 2000. See Funderburk, 276 Ga. at 554 n. 1. At the time of that murder, OCGA § 17-10-7 (c) applied only to the commission of "a felony . . . other than a capital felony," and murder is a capital felony, so that

subsection did not authorize Funderburk's sentence.[2]  On direct appeal, this Court affirmed Funderburk's murder conviction but vacated his sentence of life without parole and remanded the case to the trial court with direction to enter a legal sentence.  See Funderburk, 276 Ga. at 556 (2).  See also Miller v. State, 283 Ga. 412, 417 (5) & n. 15 (658 SE2d 765) (2008).

Kimbrough, however, was sentenced as a recidivist under OCGA § 17-10-7 *(b)*, addressing second-time offenders for "serious violent felon[ies]," not OCGA § 17-10-7 *(c)* like Funderburk.  When Kimbrough murdered Demba in July 2004, OCGA § 17-10-7 (b) authorized a sentence of life without parole for "a serious violent felony" like murder if the defendant previously had been convicted in Georgia of a "serious violent felony" or had "been convicted under the laws of any other state or of the United States of a crime which if committed in this state would be a serious violent felony."[3]  Kimbrough does not dispute

---

[2]  As we have previously noted, in 2010 the General Assembly amended OCGA § 17-10-7 (c) to remove the exception for capital felonies.  See Hyde v. State, 299 Ga. 135, 136 n. 2 (786 SE2d 681) (2016) (citing Ga. L. 2010, p. 563, § 1).

[3]  In July 2004, OCGA § 17-10-7 (b) said in relevant part:

> (1)      As used in this subsection, the term "serious violent felony" means a serious violent felony as defined in subsection (a) of Code Section 17-10-6.1.
> (2)      Any person who has been convicted of a serious violent felony in this state or who has been convicted under the laws of any other state or of the United

that his 1994 kidnapping conviction in Florida was for a crime that if committed in Georgia would be a serious violent felony.[4] OCGA § 17-10-7 (c) begins with the phrase "[e]xcept as otherwise provided in subsection (b)," and we explained in Funderburk that statutory provisions other than OCGA § 17-10-7 (c) authorized a sentence of life without parole for murder, including specifically OCGA § 17-10-7 (b):

> Although a sentence of life imprisonment without possibility of parole may be imposed for murder, either as a recidivist sentence under OCGA § 17-10-7 (b) (2), which requires that the defendant be previously convicted of a serious violent felony (see OCGA § 17-10-6.1 (a)), or as an alternative sentence when the death penalty is sought (see [former] OCGA § 17-10-31.1), neither of those circumstances is present in this case.

---

States of a crime which if committed in this state would be a serious violent felony and who after such first conviction subsequently commits and is convicted of a serious violent felony for which such person is not sentenced to death shall be sentenced to imprisonment for life without parole. . . .

Ga. L. 1994, p. 1959, § 12. The only pertinent amendment since then added "[e]xcept as provided in subsection (e) of Code Section 17-10-6.1" at the start of OCGA § 17-10-7 (b) (2). In July 2004 as now, OCGA § 17-10-6.1 defined the term "serious violent felony" to include malice murder as defined in § 16-5-1 and kidnapping as defined in OCGA § 16-5-40. See OCGA § 17-10-6.1 (a) (1), (3); Ga. L. 1994, p. 1959, § 11.

[4] As this Court recounted in his direct appeal, Kimbrough broke into the Florida victim's home at night through a back window, carried her into a bedroom, hit her on the head, and stole personal items as well as her car. See Kimbrough, 281 Ga. at 886 (2).

4

Funderburk, 276 Ga. at 555 (2) n. 2.  See also Henry v. State, 279 Ga. 615, 618 (6) (619 SE2d 609) (2005) (holding, with a "compare" citation of Funderburk, that "OCGA § 17-10-7 (b) authorized the trial court to impose life imprisonment without parole for [a 1997] murder, so long as [the defendant] was previously convicted of a 'serious violent felony' as defined in OCGA § 17-10-6.1 (a)").

3.      Kimbrough also contends that, even assuming OCGA § 17-10-7 (b) authorized his sentence of life without parole for murder, his sentence is still void, pointing to opinions of this Court and the Court of Appeals that included some broad statements suggesting that a sentence of life without parole was available for murders committed before April 29, 2009, *only* if the State had sought the death penalty.[5]  These cases begin with State v. Ingram, 266 Ga. 324 (467 SE2d 523) (1996), where this Court said:

---

[5] In 2009, the General Assembly amended the murder statute, OCGA § 16-5-1, to authorize a sentence of life without parole for all murders committed on or after April 29, 2009.  See Ga. L. 2009, p. 223, §§ 1, 11 (a).  The 2009 Act explicitly said in § 10 that "[a] person may be sentenced to life without parole without the prosecutor seeking the death penalty under the laws of this state."  In 2011, the General Assembly expressly required the codification of § 10 of the 2009 Act in the Official Code of Georgia Annotated as OCGA § 17-10-16.1.  See Ga. L. 2011, p. 752, § 17 (3).  See generally Heywood v. State, 292 Ga. 771, 777-778 (5) (743 SE2d 12) (2013).

We note that in 2014, the General Assembly amended the murder statute again, effective July 1, 2014, to create the offense of murder in the second degree with a sentencing range of 10 to 30 years in prison.  See Ga. L. 2014, p. 444, § 1-1.

We conclude from a consideration of the Act [Ga. L. 1993, p. 1654] as a whole that the Legislature intended the sentence of life without parole be considered and imposed only when seeking the death penalty. This conclusion is further reinforced by Section 9 of the Act, which expressly provides that "[n]o person shall be sentenced to life without parole unless such person could have received the death penalty under the laws of this state. . . ." The unavoidable result of the legislative enactment is to bar the State from seeking life without parole unless the State has filed a notice of intent to seek the death penalty.

Id. at 326 (6). In Johnson v. State, 280 Ga. App. 341 (634 SE2d 134) (2006), the Court of Appeals said:

Johnson contends the trial court erred by sentencing him to serve a life sentence without parole because the Supreme Court of Georgia held in [Ingram] that a life sentence without parole was authorized only in cases in which the State first sought the death penalty. We must agree.

Id. at 346. In Williams v. State, 291 Ga. 19 (727 SE2d 95) (2012), this Court said, citing Ingram:

Prior to April 29, 2009, a person who was convicted of murder could either be sentenced to death or life in prison with the possibility of parole. Life sentences without the possibility of parole were only imposed in those cases in which the State sought the death penalty.

Id. at 20 (1). And in Moore v. State, 293 Ga. 705 (749 SE2d 660) (2013), again relying on Ingram, we said:

6

It is clear from the language of [Ga. L. 1993, p. 1654] that in 2001 the State could seek a sentence of life without the possibility of parole only in those cases where the State could, consistent with state and federal laws, impose a sentence of death.

Id. at 707.

However, in Ortiz v. State, 266 Ga. 752 (470 SE2d 874) (1996), which was decided just a few months after Ingram, this Court upheld a *recidivist* sentence of life without parole under what is now OCGA § 17-10-7 (b) in a case where the charges did not even allow the State to seek the death penalty, in the course of rejecting several constitutional challenges to the statute. See Ortiz, 266 Ga. at 753-754 (2) (a). Then in Funderburk, as mentioned earlier, we specifically noted that a life without parole sentence could be imposed for murder "*either* as a recidivist sentence under OCGA § 17-10-7 (b) (2) . . . *or* as an alternative sentence when the death penalty is sought." Funderburk, 276 Ga. at 555 (2) n. 2 (emphasis added).

Finally, in State v. Velazquez, 283 Ga. 206 (657 SE2d 838) (2008), we directly rejected reliance on Ingram for the proposition that "a sentence of life without parole is authorized 'only in cases in which the State first sought the death penalty.'" Id. at 207 (citation omitted). We explained that "[i]t is . . . the

7

statutory scheme created by the General Assembly that controls . . . , not simply language in this Court's opinion in Ingram." Id. We explicitly distinguished Ingram, which did not involve recidivist sentencing, from Ortiz, which "arose under the provisions of OCGA § 17-10-7 (b) (2), which specifically deals with certain recidivist offenders," emphasizing that "the situation in each case is governed by specific statutes." Velazquez, 283 Ga. at 209 n. 3. See also Redden v. State, 294 Ga. App. 879, 881 (2) (670 SE2d 552) (2008) ("Ingram held that under the statutory scheme created by OCGA §§ 17-10-16 (a), 17-10-30.1, 17-10-31.1, and 17-10-32.1, the legislature intended the sentence of life without parole to be considered and imposed only when the state is seeking the death penalty. Clearly, the holding in Ingram did not impact OCGA § 17-10-7 (b) (2).").

The clear language of OCGA § 17-10-7 (b) required Kimbrough to be sentenced to life without parole for his conviction of the July 2004 murder in light of his prior kidnapping conviction. Nothing this Court has said in cases not involving recidivist sentencing renders Kimbrough's sentence erroneous,

much less void.[6]  Accordingly, we affirm the trial court's judgment denying his motion to correct his sentence.[7]

Judgment affirmed.  All the Justices concur.

Decided February 6, 2017.

Murder. Clayton Superior Court. Before Judge Carter.

Benny Earl Kimbrough, pro se.

Tracy Graham Lawson, District Attorney, Elizabeth A. Baker, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellee.

---

[6]  To the extent that cases like Ingram, Johnson, Williams, and Moore may be read as precluding a life without parole sentence based on the recidivist sentencing statutes, that reading is disapproved.

[7]  Kimbrough also argues that OCGA § 17-10-2 (c) required the trial court to conduct a sentencing hearing before the jury in order to impose a sentence of life without parole.  However, when a sentence of life without parole is mandatory under OCGA § 17-10-7, the defendant has no right to a sentencing hearing before a jury under OCGA § 17-10-2 (c).  See Shields v. State, 264 Ga. App. 232, 238-239 (5) (590 SE2d 217) (2003).